[redacted]

[redacted]

**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Howard Kirk HALL, Defendant–Appellant.**

**No. 99–6056.**

United States Court of Appeals, Sixth Circuit.

May 2, 2001.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

530

Before MARTIN, Chief Judge; COLE, Circuit Judge; and NUGENT, District Judge.[*]

## OPINION

Nugent, District Judge.

Appellant Howard Kirk Hall was found guilty by a jury sitting in the United

[*] The Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio, sitting by designation.

States District Court for the Eastern District of Kentucky on one count of manufacturing more than 100 marijuana plants, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Appellant filed a timely notice of appeal to this Court, challenging the district court's denial of his motion to suppress drug evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 to review the judgment of the district court. For the reasons set forth below, we hereby AFFIRM the district court's denial of the motion to suppress.

## I. BACKGROUND

The issue raised on appeal in this case is quite narrow. In particular, the sole question before us is whether the district court improperly denied Appellant's motion to suppress evidence seized during a search. We now examine the relevant background as set forth by the parties with respect to this issue.

On December 14, 1998, Special Agent Paul Haertel of the Federal Bureau of Investigation prepared an application and affidavit for a search warrant of a residence located at 875 Proctor Road in Beatty ville, Kentucky. J.A. at 16. Special Agent Haertel sought the warrant after obtaining information that Appellant had approximately 200 to 300 cloned marijuana plants in aquariums in the basement of the home. *Id.* at 17. The information concerning these plants came from a man named John Hughes, who alleged to have seen the plants while replacing flooring in the residence in September of 1998. *Id.*

Mr. Hughes informed the police that the basement was divided into four partitioned rooms, with one of the rooms containing a single grow light and ten aquariums, each of which contained approximately 25 to 30 cloned marijuana plants. *Id.* He also indicated that he observed wiring in the basement that could be used for more grow lights. *Id.* Furthermore, Mr. Hughes stated that he saw three more grow lights that were not in use at the time. *Id.*

Based upon this information, Special Agent Haertel indicated in his affidavit that, "[b]ased upon the experience of the investigating officers[,] the use of aquariums for the propagation of the cloned marijuana indicates a large scale marijuana grow operation." *Id.* He further explained that indoor grow operations require a significant amount of time for the cloned plants to mature from the initial stages to the final product, taking months and possibly even years at a time. *Id.* at 17–18. Special Agent Haertel also stated that, on November 25, 1998, the Kentucky State Police Special Operations Group conducted a flyover of the property using thermal technology. *Id.* at 18. The flyover revealed "a heat signature that was unusual in nature and could not be easily explained as being emitted from a lawful source." *Id.* In addition, Special Agent Haertel indicated that a drive-by surveillance, conducted on December 10, 1998, did not uncover a lawful reason for the heat signature. *Id.*

Upon review of the affidavit and application, United States Magistrate Judge James B. Todd issued the search warrant.[2]

---

**2.** The warrant authorized the following items to be seized:

 1. Books and records reflecting sales, transfer or transportation of drugs and amounts of monies owed for drugs including computer records.

 2. Records reflecting the names, addresses and telephone numbers of co-conspirators and telephone toll records for any residential or commercial telephone.

 3. Sales receipts and other records reflecting the expenditure of monies or receipts of monies or other valuables which are the proceeds from unlawful drug distribution.

 4. Currency and money wrappers.

Government agents executed the search warrant on the day of its issuance, December 14, 1998.

Prior to trial, Appellant filed a motion to suppress the evidence seized during the search. In his motion, Appellant argued that the information used to obtain the warrant was approximately three months old and, therefore, stale. On May 4, 1999, the district court held a hearing on the motion. At the close of the hearing, the district court denied the motion to suppress. In doing so, the district court stated:

> Looking at the staleness question[,] there are four considerations or four factors; defendant's course of conduct, nature and duration of the crime, nature of the relevant evidence, and any corroboration of the older and more recent information.
>
> The Sixth Circuit has held that the function of a staleness test in the search warrant context does not [impose upon] the creator, an arbitrary time limitation within which discovered facts must be presented to a Magistrate. Considerations of the passage of time must also account for the inherent nature of the crime.
>
> If an affidavit recites activity which indicates a protracted sort of or continuous sort of conduct, [the passage of time,] of course, is of less significance.

Here[,] the affidavit describes [a] marijuana growing operation [and] states that it requires months—or [sic] for clone plants to mature from the initial to the final product. The affidavit is not specific as to the amount of time required, but the affidavit is indicative that a certain amount of time will be required.

Since the—the affidavit states that the plants were in Jiffy pots and aquariums, and so that's indicative of the fact that the plants were at early stages of development. And the nature of an indoor cultivation is an ongoing enterprise, which is supported that three months after observing plants such as those described by—what's his name?

MR. WEST: Hughes.

THE COURT: Is not too long or too stale. And there is a Sixth Circuit case that says no stalement [sic] after five-and-a-half months because marijuana cultivation is a long-term crime. And the affidavit includes an experienced DEA [sic] that says keep equipment at residence between operations. I don't know if after my finding that staleness is necessary to get into the flower[sic], but the evidence as I hear it or it's set out in the affidavit indicates that at least there was unusual signature. There may be other explanations for the signature, but this is

---

5. Records of banking transactions to conceal and launder trafficking proceeds.
6. Records of transactions to conceal valuable assets including real estate, automobiles, gold, silver, furs and precious gemstones which have been purchased with the proceeds of unlawful drug trafficking.
7. Records reflecting the transportation of drugs, including airline tickets, mail receipts, private carrier receipts, credit card receipts, rented care [sic], luggage tags and other travel related records.
8. Firearms, to include handguns, rifles, shotguns or automatic weapons.

9. Videotapes and photographs of drug activities.
10. Computers and computer diskettes.
11. Controlled substances.
12. Controlled substance paraphernalia, such as scales, plastic baggies, rolling papers, etc.
13. Contraband, the fruits of the crimes set forth in the affidavit and any other property designed or intended for use or which is or has been used as the means of committing a drug offense.
J.A. at 16–20.

just additional information for the Magistrate to consider and determine whether there is probable cause which would justify the issuance of a search warrant.

So I don't know that there is any requirement that on this flyover sort of thing that you—that you say beyond any doubt what this particular signature is or what it appears to be. But here I think it is sufficient to give additional information to the Magistrate.

Now, frankly, even if I felt the other way about this, if I felt like, well, this was stale, I think Leon is going to apply here, that the officers relied on this warrant, it was issued by a United States Magistrate—Magistrate Judge who has some expertise in reviewing affidavits and issuance of warrants. And it is not facially invalid. There is nothing here that would suggest that the officer could not have harbored an objectively reasonable belief in existence of probable cause. There is no allegation that the Magistrate was not neutral, that he was detached, didn't do his job here. And if I had been the Judge, I would not have issued the search warrant for the record. But that's not my—that's not my review here. And this may be one of the situations where half would and half wouldn't. I would not, and I have denied or refused to issue a search warrant based on similar affidavits.

As Mr. West indicates in his response to the motion to suppress, the task of the issuing Magistrate is to make a practical common sense decision that probable cause exists. The duty of the reviewing Court is simply to insure that the Magistrate had a substantial basis for concluding that probable cause exists or existed. He did.

For all these reasons[,] the motion to suppress is denied.

*Id.* at 103–06. Here, Appellant urges this Court to find that the district court's ruling in this regard was in error.

## II. DISCUSSION

 We review a district court's factual findings regarding motions to suppress for clear error and its legal conclusions *de novo. See United States v. Blair,* 214 F.3d 690, 696 (6th Cir.2000). In doing so, we extend great deference to a previous finding of probable cause for the issuance of the search warrant. *See id.* Thus, it is this Court's task to determine whether, in light of the totality of the circumstances, the judge issuing the warrant had a substantial basis for concluding that a search of the specified premises would uncover evidence of wrongdoing. *See id.*

Appellant first asserts that the district court should have granted the motion to suppress because the search warrant contained facts that were stale and remote in time. This Circuit recognizes that "the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *United States v. Canan,* 48 F.3d 954, 959 (6th Cir.1995). Instead, the determination of staleness is based upon the type of crime alleged. *See id.* When ongoing or continuous criminal activity is alleged, time is less significant. *See id; see also United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998) (applying the staleness test in the context of alleged continuing drug enterprise and finding that the facts in the affidavit were not, in light of the allegations, stale).

 In this case, the search warrant contained evidence of criminal activity occurring over a period of time. The affidavit set forth facts describing a marijuana growing operation that was, by its very nature, months or even years in duration.

Furthermore, as the district court noted, the fact that the plants were in aquariums when Mr. Hughes observed them in September of 1998 reflected that they were at the early stages of development at that point in time. Moreover, the subsequent flyover and drive-by in November and December of that year further supported the district court's finding that the facts in the warrant were not stale. Given that the nature of an indoor cultivation is an ongoing enterprise, we find that the district court did not err in finding that the facts were not stale or remote in time.

 Appellant next asserts that there was no probable cause to support a search of the residence. When reviewing an application for a search warrant, the magistrate judge must make an independent determination of whether probable cause exists. *See Illinois v. Gates*, 462 U.S. 213, 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme Court promulgated the "totality of the circumstances" test for making determinations of probable cause. *See id.* In doing so, the Supreme Court explained that "the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. Probable cause for a search warrant does not require certainty that a crime has been committed or that the evidence will be present in the place to be searched. *See United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir.1996). Furthermore, the magistrate judge's determination is "afforded great deference." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir.1985) (quoting *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir.1983)).

Applying the probable cause standard to the instant case, the district court found, under the totality of the circumstances, that the Magistrate Judge had a substantial basis for determining that contraband or evidence of a crime would be found at the search location. The affidavit contains evidence that Mr. Hughes actually observed the contraband on the premises of the place to be searched. More specifically, Mr. Hughes claimed to have seen ten aquariums, each containing approximately 25 to 30 cloned marijuana plants, and several grow lights. Furthermore, the affidavit reflected that a flyover of the property using thermal technology revealed a heat signature that was unusual in nature, and that a drive-by surveillance did not uncover a lawful reason for the heat signature. On this basis, the district court denied the motion to suppress based upon the claim of an alleged lack of probable cause.

 Affording proper deference to the finding of probable cause, we find that the district court did not err in holding that the Magistrate Judge made a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there was a fair probability that contraband or evidence of a crime would be found in the residence to be searched. Because probable cause for a search warrant does not require certainty that a crime has been committed or that the evidence will be present in the place to be searched, we affirm the district court's ruling in this regard.

 Furthermore, even if this Court found the warrant in question to be in violation of the Fourth Amendment based upon staleness or a lack of probable cause, the district court would still have been correct in denying the motion to suppress under the good faith exception outlined in *United States v. Leon*, 468 U.S. 897, 918–21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The good faith exception to the exclusionary rule states that the fruits of a constitu-

tionally infirm search need not necessarily be suppressed unless the warrant contained a knowing or reckless falsehood, the issuing judge acted as a mere "rubber stamp" for the police, or the warrant and the affidavit, even after extending appropriate deference to the issuing judge's determination, did not establish probable cause or possessed a technical deficiency such that the executing officers cannot reasonably assume the warrant to be valid. *Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405.

[8] In the instant matter, there exists no evidence that Special Agent Haertel gave a knowingly false affidavit or otherwise acted in bad faith upon seeking the search warrant. The warrant was issued by a proper authority, namely United States Magistrate Judge James B. Todd. Furthermore, the record is devoid of any evidence that Magistrate Judge Todd abandoned his neutral role when he issued the warrant. Finally, we cannot say that this warrant was "so lacking in probable cause as to render official belief in its existence entirely unreasonable." *United States v. Schultz,* 14 F.3d 1093, 1098 (6th Cir.1994). This being the case, the officers' good faith reliance on the warrant in executing the search was, indeed, reasonable. Therefore, under either scenario, the evidence obtained from the search warrant at issue properly survived the motion to suppress.

### III. CONCLUSION

For the reasons stated herein, we AFFIRM the district court's denial of the motion to suppress. More specifically, we hold that the district court did not err in finding that the search warrant executed by the government of the premises located at 875 Proctor Road in Beattyville. Kentucky was not based upon stale information. Furthermore, the district court did not err in upholding the Magistrate

Judge's initial determination of probable cause. In light of the totality of the circumstances, the district court properly found that the Magistrate Judge issuing the warrant had a substantial basis for concluding that a search of the premises would uncover evidence of wrongdoing.