# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: NOVEMBER 2, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000330-MR

KEVIN FRANKLIN      APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.      HONORABLE FREDERIC J. COWAN, JUDGE
NO. 14-CR-001318

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Jefferson County jury found Kevin Franklin guilty of Murder and Tampering with Physical Evidence. On June 8, 2016, the Jefferson Circuit Court sentenced Franklin to thirty years to serve, pursuant to the jury's recommendation. Franklin now appeals his conviction as a matter of right to this Court. For the reasons discussed herein, we affirm his conviction.

## I. BACKGROUND

On the evening of May 10, 2014, Franklin was at his grandfather Buck's home. His great uncle, Edward Jumper, saw him that evening. Franklin came out of Buck's home and walked over to the home of Miss Nini, Buck's neighbor, where Jumper was visiting. Jumper was at Miss Nini's garage with two other

men: Sammy Wright and Walter Bald. Jumper testified that, at some point that evening, Franklin saw someone in the area and said, "That's the man I got to get." He walked out of sight and Jumper heard gunshots. According to Jumper, Franklin returned to the garage and gave Bald a gun, which Bald then took into his own home; Bald disputes this statement and states that Franklin never gave him a gun. Bald's involvement was largely contested as his recorded interview was wholly inconsistent with his testimony at trial.

Jumper also testified that Franklin's mother, Tracy Howard, pulled up in her vehicle some time later. Franklin got into the trunk and Howard drove away. Jumper left the scene without talking to police.

Another man in the area, Thomas Edelen, also heard the gunshots. He found a man, later identified as Nick Baker, lying near death after having been shot multiple times. Baker had been dating Franklin's first cousin, Jasmine Howard. Baker ultimately died from his injuries.

Bald led detectives to a firearm in a tree stump near Miss Nini's home. Forensic evidence determined that it was the same gun that fired shell casings found at the scene and the bullet found in Baker's body.

## II. ANALYSIS

On his appeal, Franklin claims four distinct errors: (1) the evidence seized from his cell phone pursuant to a warrant should have been excluded; (2) the trial court should have granted a mistrial due to juror misconduct; (3) the trial court improperly limited the defense cross-examination of Edward Jumper; and (4) the Commonwealth improperly admitted Walter Bald's prior

2

inconsistent statement without laying a proper foundation for it. Due to the reasons discussed herein, we find no error and affirm Franklin's conviction and sentence.

## A. The officers properly relied upon the search warrant in searching Franklin's phone.

Police arrested Franklin on May 13, 2014. At the time of his arrest, he was in possession of a white Apple iPhone. According to officers, they saw Franklin using the cell phone prior to his arrest. The phone was seized and Detective Miracle executed an affidavit for a search warrant of the phone on May 21, 2015. A judge signed the warrant and it was executed the next day. In relevant part, the affidavit stated:

> [Witnesses] observed Kevin Franklin's mother ... drove [*sic*] up to 1300 Hazel Road shortly after the shooting occurred and conceal Kevin in the trunk of her vehicle and drive him out of the area ... On 5/13/2014, the Fugitive Viper Unit made contact with Kevin Franklin at 11619 Tazwell Drive. Franklin was located inside the address texting on a white Apple iPhone ... Based on my investigative experience suspects frequently use communication devices before, during and after a crime is committed[.]

Franklin filed a motion to suppress the evidence, based on a claim that the affidavit was deficient of probable cause for the search. The motion was denied and several pieces of evidence from the phone's forensic examination were admitted at trial.

At the outset, we recognize that "we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law" in reviewing a trial court's denial of a suppression motion. *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006). The first step entails a

3

determination "if the facts found by the trial judge are supported by substantial evidence[.]" *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010). Then, an appellate court must determine if the trial judge had a "substantial basis" for finding "that probable cause existed." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

"Whether probable cause exists is determined by examining the totality of the circumstances." *Moore v. Commonwealth*, 159 S.W.3d 325, 329 (Ky. 2005) (quoting *United States v. Hammond*, 351 F.3d 765 (6th Cir. 2003)). "[T]he test for probable cause is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Moore*, 159 S.W.3d at 329 (citing *United States v. Miller*, 314 F.3d 265 (6th Cir. 2002)). "Probable cause does not require certainty that a crime has been committed or that evidence will be present in the place to be searched." *Moore*, 159 S.W.3d at 329 (citing *United States v. Hall*, 8 Fed.Appx. 529 (5th Cir. 2001), *cert. denied*, 536 U.S. 961 (2002)).

Looking to the totality of the circumstances, we hold that probable cause was sufficiently established in the search warrant at issue here. The officer listed the facts of the case tying Franklin to the crime, connecting Franklin to the phone seized, and linking Franklin's use of the phone to his arrest and potential communications about the crime. The trial judge's findings were supported by substantial evidence and the judge had a substantial basis in finding the existence of probable cause.

4

Franklin correctly cites to the Supreme Court's decision in *Riley v. California* as recognizing the distinction of the privacy inherent in cell phones in our modern world. *See Riley v. California*, __ U.S. __, 134 S.Ct. 2473, 2488-91 (2014). However, the decision in *Riley* referred to a *warrantless* search of a cell phone incident to arrest. And the Court offered a simple solution to avoid these issues of unconstitutional searches: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 2495.

Detective Miracle did just as the Supreme Court instructed. He obtained a warrant. Franklin has not alleged that Detective Miracle lied or misrepresented vital information in the application for the warrant; he only claims that the affidavit on its face was insufficient to establish probable cause to obtain the warrant. This reason is exactly why our Courts have adopted the good faith exception for deficient warrants upon which officers rely: to encourage officers to continue to obtain warrants and conduct themselves in a good faith manner. "[A] technically defective search warrant obtained in good faith after proper application to a judicial officer is preferable to an unsupervised and potentially fraudulent warrantless search." *Crayton v. Commonwealth*, 846 S.W.2d 684, 688-89 (Ky. 1992).

This Court has held "that application of a good faith exception to the warrant requirement" is proper under our Constitution. *Id.* at 689 (citing *United States v. Leon*, 468 U.S. 897 (1984)). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is

5

appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926. This situation presents a clear application of the good faith exception. Franklin has not alleged that the magistrate abandoned his neutral role nor has he alleged that Detective Miracle acted dishonestly or recklessly. As such, even if we found that the warrant was issued upon a deficient finding of probable cause, the good faith exception would provide protection to the evidence seized. The trial court correctly denied the motion to suppress.

## B. The trial court did not abuse its discretion in denying defendant's motion for mistrial.

At issue in this case is a motion for mistrial after juror misconduct came to the court's attention. One of the jurors failed to disclose her involvement with the prosecutor's office. Her son was killed in a vehicular homicide and his case was prosecuted by the Office of the Commonwealth's Attorney involved in this case. She met with the prosecutor on her son's case multiple times, along with the Victim's Advocate. Ultimately, the Victim's Advocate recognized her by appearance and searched the names of the jurors to determine that she was in fact the victim in a prior case. Once this was confirmed, the Commonwealth informed the defense and the court about the conflict. All parties conceded that her presence on the jury was improper and she should be struck. The judge denied the motion for mistrial but dismissed the juror in question and proceeded with the remaining twelve jurors.

"It is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion." *Woodard v. Commonwealth,* 147 S.W.3d 63, 68 (Ky. 2004). Additionally, "a mistrial is an extreme remedy and should be resorted to only when there is a *fundamental defect* in the proceedings and there is a *'manifest necessity* for such an action.'" *Id.* (emphasis added). The cause of the need for mistrial "must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in *no other way.*" *Id.* (emphasis added).

In *Gould v. Charlton Co., Inc.,* this Court held that a trial judge's denial of a mistrial after juror misconduct was an appropriate use of discretion. 929 S.W.2d 734, 740 (1996). After being apprised of a juror gaining extrajudicial information, the court informed the parties, questioned the jurors individually, polled the jury, dismissed one juror, and admonished the remaining jury members of their duty. *Id.* at 735-36. This Court held that "[t]he trial judge made a thoughtful determination that a fair and impartial jury was in place prior to commencement of deliberations and that a mistrial was not necessitated."

In contrast, this Court held that the conduct in *Deemer v. Finger* was sufficient to undermine the fairness and impartiality of the jury. 817 S.W.2d 435, 437 (Ky. 1990). A juror told the judge, outside of the presence of counsel, that she had spoken with her husband about the case, against the admonition

7

of the court. *Id.* at 436. The court did not advise the parties, poll the jury, question the juror in the presence of counsel, or undergo any action to ensure the impartiality of the proceedings. *Id.* This Court held that it would "not presume that this juror's independent knowledge failed to affect her decision in this case" and we held "that the cause was not tried by a fair and impartial jury, and that the appellant suffered manifest injustice and [was] entitled to a new trial." *Id.* at 437.

This case lies somewhere between these two extremes. The court was apprised of the potential for juror misconduct promptly by the Commonwealth. The Commonwealth notified the defense of the issue when it came to their attention. The parties discussed the potential issue with the court. The court did conduct questioning of the juror in question, who admitted that she failed to disclose material information. However, the court failed to ask the juror whether she had discussed her experiences with any other jury members or conduct any polling or admonishment of the jury.

Although we would encourage courts to do everything they can to ensure the impartiality of our juries through polling and appropriate *voir dire* when there are potential issues, we cannot say that the judge here abused his discretion in denying the motion for mistrial. A mistrial is only necessary when a prejudicial effect cannot be removed in any other way. Here, the judge properly dismissed the juror and proceeded with a constitutionally sufficient jury. Defense counsel, without any actual proof of prejudice, claimed that a mistrial was the only possible recourse. However, the court had no actual

8

evidence of any prejudice that occurred. The judge corrected the prejudice from the juror's failure to report her prior experiences by dismissing her. We cannot say that a mistrial was a manifest necessity here and thus deem no abuse of discretion in the judge's conduct.

## C. There was no error in the limitation of Edward Jumper's cross-examination.

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974))). However, "a trial court may, of course, impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant[.]'" *Olden*, 488 U.S. at 232 (quoting *Van Arsdall*, 475 U.S. at 679).

This Court has acknowledged the trial court's discretion in limiting cross-examination. "Defendants cannot run rough-shod, doing precisely as they please, simply because cross-examination is underway. So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate

9

boundaries." *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997) (quoting *U.S. v. Boylan*, 898 F.2d 230, 254 (1st Cir. 1990)). "The presentation of evidence as well as the scope and duration of cross-examination rests in the sound discretion of the trial judge." *Maddox*, 955 S.W.2d at 721 (quoting *Moore v. Commonwealth*, 771 S.W.2d 34, 38 (Ky. 1988)).

Edward Jumper provided an eye-witness account to Franklin's whereabouts the night of Baker's murder. Jumper testified that he and several others were at the home of Nini Bald (a.k.a. Miss Nini), smoking and drinking. He saw Franklin come over, walk back to his house, and come back over again. Franklin saw someone and said "That's the man I got to get." He went in the direction of the man and Jumper heard several gunshots. Franklin came back and Bald asked him, "Did you hit him?" Franklin responded, "He's on the ground, ain't he?" Franklin gave Bald a gun, which Bald took inside the home. Franklin left in the trunk of his mother's vehicle.

On direct examination, Jumper admitted that he did not tell police anything that evening. He spoke to Detective Miracle later. Defense counsel began cross-examination by asking if Jumper had met with the prosecution in preparation for his testimony. Jumper admitted to meeting with the prosecutor multiple times over the past several weeks and reviewing his testimony. Defense counsel attempted to ask whether the prosecution had helped Jumper remember anything, implying improper coaching on the part of the prosecution. The Commonwealth objected on the ground that there was no basis for the question; the court sustained and provided an admonition to the

10

jury not to take into consideration any implication of impropriety on the part of the prosecution in preparing the witness for trial. Defense counsel moved on in his cross. Jumper admitted to: drinking alcohol the day of the murder; consuming Lortab, an opiate, three times a day for a significant period of time for back pain, including the day of the murder; having a prior cocaine addiction; having no memory of the exact date of the shooting; and memory issues due to his age.

The defense's argument here must fail. As long as there is a "reasonably complete picture of the witness' veracity, bias and motivation," the court can properly exercise its discretion to limit cross-examination. Defense counsel provided a robust and expansive cross-examination, undermining several key components of Jumper's testimony. Considering the full breadth of the cross-examination, we cannot say the judge abused his discretion in not allowing this one small portion of defense's cross-examination.

Even were we to find error in the trial court's limitation, our review would be subject to a harmless-error analysis. *See Olden*, 488 U.S. at 232. Under this analysis, we would still conclude that the restriction was harmless beyond a reasonable doubt. Franklin had expansive opportunity to cross-examine Jumper.

**D. There was no error in the admission of Walter Bald's recorded statement.**

Franklin lastly claims error in the admission of Walter Bald's prior inconsistent statement without proper authentication pursuant to KRE 613(a). To be clear, the prior statement was admitted under KRE 801A by the trial

11

judge but that rule requires that the prior statement only be admitted after "a foundation [is] laid as required by KRE 613." KRE 613 requires that the witness, whose prior statement is being proffered, "must be inquired of concerning [the statement], with the circumstances of time, place, and persons present, as correctly as the examining party can present them[.]" We hold that the Commonwealth laid sufficient foundation under KRE 613 and the prior inconsistent statement was properly admitted.

Walter Bald was summoned to testify by both the Commonwealth and defense. He failed to appear pursuant to subpoena. He was arrested and was being held pursuant to that arrest when he testified at trial. Upon questioning of the Commonwealth, Bald repeatedly stated that he could not recall any of the events of the day of murder, that he did not make statements to the police or did not remember any statements to the police, and would not be able to remember any of the statements he made. The prosecutor offered Bald multiple opportunities to review his interview with Detective Miracle in order to refresh his memory but Bald repeatedly stated that it would not change his testimony and would not make him remember anything. At trial, the following exchange occurred on direct examination:

Commonwealth: Would you like to take a break and listen to your statement?

Bald: No, I don't.

Commonwealth: You don't want to?

Bald: It's not necessary.

12

Commonwealth:     Okay you're not going to be able to remember it
                  if you listen to it?

Bald:             Probably not.

This kind of exchange occurred multiple times on direct. Bald continued to

refuse an opportunity to review his statement, commenting, "If I don't

remember, I don't remember" and, "You can't make me remember if I don't

remember." The prosecutor ended his direct by once again offering Bald an

opportunity to review this statement and was again refused.

Upon cross examination, Bald had a "brilliant memory," as the trial judge

described. He suddenly remembered the exact day of the murder, who was

present, what he and the others were doing, the circumstances surrounding

Detective Miracle's visit, why he made certain statements to Detective Miracle,

and what generally happened when he spoke with Detective Miracle. Upon

redirect, his memory loss seemed to recur and he was once again unable to

recall the answers to questions from the Commonwealth.

A trial judge's evidentiary decisions will not be overturned absent an

abuse of discretion. *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky.

2007) (citing *Woodard v. Commonwealth,* 147 S.W.3d 63 (Ky. 2004)). However,

Franklin concedes that this issue was unpreserved by contemporaneous

objection and must be reviewed under our palpable error standard.[1] Under

---

[1] The Commonwealth claims that Franklin is estopped from asserting this error as he invited the error. However, because we find there was no error in the Commonwealth's conduct, we proceed in assessing this claim of error substantively.

It should also be noted, however, that defense counsel, while not objecting to the statement being admitted generally, said they may have objections to particular sections of the statement being played to the jury. The record stops for the judge to

13

this standard, decisions of the trial court will be reversed only upon a showing that a "manifest injustice has resulted from the error." RCr 10.26. *See also Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013).

Under KRE 801A, an inconsistent prior statement of a witness is admissible, even if the witness is available, if that witness testifies at a trial or hearing, is "examined concerning the statement," and the foundation requirements of KRE 613 are met. *See also Yates v. Commonwealth*, 430 S.W.3d 883, 900 (Ky. 2014). In *Wiley v. Commonwealth*, this Court revisited the admission of inconsistent statements from "forgetful" witnesses. 348 S.W.3d 570, 578 (Ky. 2010). We reiterated the Court of Appeals statement that "No person should have the power to obstruct the truth-finding process of a trial and defeat a prosecution by saying, 'I don't remember.'" *Id.* (quoting *Wise v. Commonwealth*, 600 S.W.2d 470, 472 (Ky. App. 1978)). Thus, we determined that "the relevant inquiry in determining if a lack of memory is (or should be treated as) a prior inconsistent statement, is whether, within the context of the case, there is an appearance of hostility of the witness which is the driving force behind the witness's claim that he is unable to remember the statement." *Wiley*, 348 S.W.3d at 578.

The parties do not dispute that the statement was properly admitted through KRE 801A. However, Franklin argues that the Commonwealth failed to strictly comply with KRE 613. Franklin correctly asserts that this court has

---

review Bald's testimony to determine admissibility and returns when the jury reenters the room. Any such specific objections are not available in the trial court record for our review.

14

"consistently required strict compliance with the foundation requirements of ... KRE 613(a)." *Noel v. Commonwealth*, 76 S.W.3d 923, 930 (Ky. 2002) (citations omitted). The reasoning behind such compliance is that "[t]he object of the question is to contradict [the witness], and it is but fair to the witness to refresh his recollection as to the declaration or words used and proposed to be proved ... " *Id.* (quoting *Cole v. State*, 65 Tenn. 239, 241 (1873)).

Franklin claims that the Commonwealth failed to specifically identify the statements described and read or play those statements for Bald to review. However, the Commonwealth did recite numerous specific statements to Bald, asking if he remembered making those statements or denied making those statements. The Commonwealth repeatedly read from the transcript of Bald's interview with Detective Miracle. The Commonwealth repeatedly gave Bald an opportunity to review his statement. Bald flatly refused this opportunity multiple times. To hold that the Commonwealth failed to strictly comply with KRE 613 when it attempted at every turn to do so but was frustrated by a hostile witness would be to contravene the logic behind our prior case law: to allow witnesses an opportunity to review and refute prior statements. Here, that opportunity was given and refused.

The Commonwealth cannot force Bald to listen to his statement and, even if they had, Bald stated his memory would not change. KRE 613 requires an examination of the witness regarding the circumstances of the statement "as correctly as the examining party can present them." The Commonwealth complied with these requirements.

15

Franklin claims this decision is starkly contrast from *Manning v. Commonwealth*, 23 S.W.3d 610 (Ky. 2000). In *Manning*, the defendant's common-law wife denied any memory of the defendant confessing to her or giving a statement to police about that confession. *Id.* at 612. At a hearing, the Commonwealth played her recorded statement to her after she denied any memory and she stated it did not refresh her memory. *Id.* At trial, she repeated her denial. "After the Commonwealth laid a foundation pursuant to KRE 613, the video of her statement to the detective was admitted at trial as a prior inconsistent statement." *Id.* (citing *United States v. Owens*, 484 U.S. 554 (1988)). This Court found the admission proper. *Manning*, 23 S.W.3d at 613.

This case is very similar to *Manning*. The witness was given the opportunity to hear particular statements, listen to the statement, and review what the Commonwealth alleged he said. The difference here is simply that the witness showed further hostility on the stand by refusing to even review his statement to refresh his memory. We cannot hold that the Commonwealth or the trial court erred after a witness's refusal under these circumstances to take the opportunities granted him by the law before evidence can be admitted.

Additionally, we must reiterate that KRE 613 requires this examination in order to allow a witness an opportunity to refute the statement before him. *See Noel*, 76 S.W.3d at 930. Bald remembered Detective Miracle questioning him during his cross-examination. He explained in detail why he gave particular statements because he feared criminal repercussions from the officer. He explained that the officers were at his mother's home to search

16

pursuant to a warrant and he feared that his mother's house would be ransacked if he failed to cooperate. Thus, in this context, we cannot hold that the witness was not given the opportunity to refute these inconsistent statements. The recorded statement was properly admitted.

## III. CONCLUSION

As to Franklin's claims against the trial court's judgment, we discern no error in any of the described decisions. As such, we affirm the judgment of the Jefferson Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

David S. Mejia

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General