Allen WILEY, III, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–SC–000702–MR.

Supreme Court of Kentucky.

Oct. 21, 2010.

Rehearing Denied March 24, 2011.

Daniel T. Goyette, Louisville Metro Public Defender, Cicely Jaracz Lambert, Assistant Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Allen Wiley, III, was convicted by a Jefferson Circuit Court jury of two counts of first-degree robbery and one count of second-degree robbery. Appellant received a sentence totaling forty-five years for the crimes. He now appeals as a matter of right. Ky. Const. § 110(2)(b).

### I. *Background*

On April 5, 2008, a man wearing a hooded sweatshirt, later identified as Appellant, entered U.S. Bank and told the teller he wanted to make a withdrawal. When Appellant could not remember his account number, he gave the teller his Social Security number. After the teller advised him he did not have an account with the bank, Appellant told the teller he was "robbing [him], do what I say or I'll kill you." The teller gave Appellant all the money in his teller drawer. This teller, however, could not identify Appellant and was the only witness as to this robbery.

Three days later, a man entered the Westport Road Speedway, drew a silver and black firearm and demanded that the clerk, Tonya Brown, give him the money from the cash register; she complied. Brown identified Appellant as the robber.

On the following day, a man wearing a hooded sweatshirt and a hat entered River City Bank. After a brief conversation with bank teller Megan Walker, the man pulled out a black gun and demanded money; Walker complied. Walker identified Appellant as the person who robbed the bank at gunpoint.

Two other River City Bank employees also witnessed the robbery. One, Josh Lightle, identified Appellant as the robber, and the other, Alisa Wilkins, testified that she was 98% sure that Appellant was the robber. She further testified that the robber wielded a silver, semi-automatic pistol.

As noted, the jury found Appellant guilty of two counts of first-degree robbery and one count of second-degree robbery. He now raises seven allegations of error: 1) the trial court erred by assessing

court costs against him despite finding him to be indigent; 2) the trial court violated his due process rights when it failed to sign and enter the restitution order; 3) the amount of restitution ordered is not supported by the evidence; 4) the evidence was insufficient to support his conviction for first-degree robbery because there was no evidence that he possessed an operable deadly weapon; 5) the trial court abused its discretion in allowing the Commonwealth to introduce hearsay testimony concerning the discovery, in his clothing, of the bait bills[1] from the River City Bank robbery; 6) the trial court abused its discretion in allowing the Commonwealth to introduce hearsay in the form of Detective Mark Hickman's testimony linking the Social Security number used in the U.S. Bank robbery to Appellant; and 7) the trial court abused its discretion, and thus violated his due process rights, when it allowed the Commonwealth to introduce prejudicial evidence of prior bad acts and other crimes.

For reasons that follow, we now affirm Appellant's convictions and sentence therefor, but vacate that portion of the sentence that assessed court costs against Appellant, as well as the part of the sentence that ordered Appellant's payment of restitution.

## II. *Analysis*

### A. Assessment of Court Costs on an Indigent Defendant

██ Appellant contends that the trial court erred when it imposed court costs of $130.00, despite finding him indigent. Appellant, however, admits he failed to preserve this error and asks for "palpable error" review. The Commonwealth does not contest Appellant's assertion that he was a "poor person" under the statutory

definition or that the trial court assessed court costs against him. KRS 23A.205(2).

██ We review unpreserved issues under the palpable error standard of RCr 10.26. *Potts v. Commonwealth*, 172 S.W.3d 345 (Ky.2005). Under that rule, an unpreserved error may be noticed on appeal only if the error is "palpable" and "affects the substantial rights of a party," and even then relief is appropriate only "upon a determination that manifest injustice has resulted from the error." RCr 10.26. In general, a palpable error "affects the substantial rights of a party" only if "it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth*, 160 S.W.3d 744, 762 (Ky. 2005). An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky.2006).

Here, we find the error to be palpable. Under KRS 23A.205(2), a trial court shall impose court costs on a defendant *unless* it finds that the defendant is a "poor person." In this regard, we have previously found it to be "manifestly unjust" to impose court costs on an indigent defendant. *Jackson v. Commonwealth*, Nos. 2008–SC–000216–MR, 2008–SC–000264–MR, 2009 WL 3526653, at *10 (Ky. Oct. 15, 2009); *see also Edmonson v. Commonwealth*, 725 S.W.2d 595 (Ky.1987) (finding that the waiver of all costs for indigent defendants language of KRS 31.110(1)(b) controlled over KRS 23A.205(2), which provides the trial court discretion in imposing court costs). As we see no reason to depart

---

1. Appellant's brief defines bait bills as "bills with recorded serial numbers."

from the reasoning in *Jackson,* we now reverse and vacate the trial court's imposition of court costs against Appellant.

### B. The Trial Court's Restitution Order

■ Appellant next contends that the trial court violated his due process rights when it ordered him to pay restitution in the amount of $5,770. Specifically, he alleges that the court arbitrarily selected the amount without allowing him an opportunity to contest that figure. Appellant also takes issue with the form of the restitution schedule, noting it lacked the trial court's signature and the clerk's "entered" stamp. As a result of the improper assessment and temporal delay, Appellant contends that, pursuant to KRS 532.032, 532.033, and 431.200, the trial court can no longer enter a restitution order.

The Commonwealth acknowledges that the record contains no discussion of restitution; however, it contends that Appellant waived his challenge to the appropriateness of the restitution order by failing to move the trial court to vacate or amend the order within the time allowed. The Commonwealth alleges that this failure deprived the trial court of any opportunity to correct the claimed errors, and consequently, this Court cannot properly consider Appellant's contentions. Alternatively, the Commonwealth asserts that if we should find merit in Appellant's argument, the appropriate remedy is to remand the matter to the trial court so that it may fully consider Appellant's contentions. We disagree and also vacate the restitution award.

Initially, we note that Appellant failed to preserve this issue for appeal, thus we evaluate it under the palpable error standard. RCr 10.26. As detailed above, we grant relief under this standard only "upon a determination that manifest injustice has resulted from the error." *Id.*

■ When ordering restitution, a trial court must base an award on reliable facts. *United States v. Silverman,* 976 F.2d 1502, 1504 (6th Cir.1992). Our Court of Appeals considered a situation similar to the present case, wherein the defendant contested the amount of restitution, yet the trial court denied him a chance to controvert the Commonwealth's evidence. *Fields v. Commonwealth,* 123 S.W.3d 914, 915–16 (Ky.App.2003). The court held that the trial court had deprived the defendant of an opportunity to be heard and adopted the due process standard articulated by the Sixth Circuit in *Silverman:* although a lower standard of due process applies at sentencing, the facts relied on by the court must "have some minimal indicium of reliability beyond mere allegation." *Id.* at 917 (*citing Silverman,* 976 F.2d at 1504). The *Fields* court thus determined that in order to satisfy this standard, the defendant must have some meaningful opportunity to be heard and the record must establish a factual predicate for the restitution order. *Fields,* 123 S.W.3d at 918.

■ Here, the sentencing record contains *no* mention of restitution, nor does the record reveal any evidence that Appellant was informed of a forthcoming hearing on the matter. As a result, Appellant had no knowledge, nor meaningful opportunity to be heard. Additionally, the "Restitution" document—filed in the record behind the judgment of conviction and sentence, but *not* a part of it—does not establish a factual predicate for the amounts ordered. The document contains no judge's signature and lists three different amounts without explanation. We are not advised as to how, or by whom, it was filed. Consequently, we cannot find that the "Restitution" ordered is supported by evidence meeting the "minimal indicium of reliability" standard articulated by the

Sixth Circuit. *Silverman*, 976 F.2d at 1504.

In addition to reliability issues, the document contains several facial irregularities. The trial court orally sentenced Appellant on September 17, 2009. The formal "Judgment of Conviction and Sentence," however, was not entered until September 21, 2009. Yet, the subject document, titled "Restitution," was not printed until September 29, 2009.[2] Moreover, it lacks the trial judge's signature as well as the "entered" stamp normally affixed to a Judgment of Conviction and Sentence. RCr 11.04(3) (stating that a judgment shall be signed and entered by the clerk).

From these facts, we find it manifestly unjust to deprive an individual of due process (notice), and then order him to pay an unsubstantiated amount set out in a document entirely disconnected from his formal sentencing order. As a result of these irregularities, we find palpable error and, therefore, reverse and vacate the restitution order.[3]

## C. Operability of the Firearm

Appellant next argues that the Commonwealth failed to present evidence that he was armed with an operable deadly weapon; thus, the court should have directed a verdict on both first-degree robbery charges. Appellant notes that robbery in the first degree requires that the defendant was "armed with a deadly weapon." KRS 515.020(1)(b). "Deadly weapon" is statutorily defined as, "any weapon from which a shot, readily capable of producing

death or other serious physical injury, may be discharged." KRS 500.080(4)(b). Appellant alleges that the Commonwealth failed to prove that he possessed a deadly weapon when he robbed Speedway and River City Bank, by neglecting to introduce evidence of the operability of the weapon. Consequently, Appellant asserts that the Commonwealth failed to prove every element of robbery in the first-degree beyond a reasonable doubt, a violation of his due process rights. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We disagree.

When evaluating a motion for directed verdict on appeal, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 188 (1991). With that standard in mind, we turn to Appellant's argument.

For decades, this Court has grappled with the statutory language relating to the operability of a deadly weapon. Although the operability requirement is currently somewhat in flux, we have never held that the firearm must be operable at the time of the robbery in order for the firearm to satisfy the deadly weapon requirement. Most recently, this Court splintered in *Wilburn v. Commonwealth*, with the plurality holding that the Commonwealth satisfies the "deadly weapon" language of KRS 500.080(4)(b) by showing that the

2. The "Restitution" document is dramatically different in appearance and font from the Judgment of Conviction and Sentence.

3. Appellant correctly observes that the Jefferson Circuit Court no longer has jurisdiction over him to enter a new restitution award. Under the standard restitution statute, KRS 532.032, 532.033, a trial court has ten days to alter, amend, or vacate its judgment. *Silver-*

*burg v. Commonwealth*, 587 S.W.2d 241, 244 (Ky.1979). Additionally, the trial court cannot grant restitution under the post-judgment restitution provisions of KRS 431.200. Under KRS 431.200, a court may order restitution for property crimes if applied for by verified petition *within* ninety days of the pronouncement of the sentence. Here, the temporal period has expired and the record contains no verified petition.

weapon used in the robbery was in the class of weapons "which may discharge a shot that is readily capable of producing death or serious physical injury." 312 S.W.3d 321, 329 (Ky.2010). Furthermore, the plurality noted that the victim's description of the item will ordinarily provide sufficient evidence to permit the jury to decide whether it was among the items the legislature defined as a "deadly weapon." *Id.* However, the plurality cautioned that an unseen and unknown item or an item the witness clearly recognizes as a toy, does not qualify as a "deadly weapon." *Id.*

With this view in mind, our review of the record reveals that the Commonwealth produced sufficient evidence to prove Appellant was armed with a deadly weapon when he robbed Speedway and River City Bank. As stated in *Wilburn,* victim testimony describing the object used by the defendant ordinarily provides sufficient evidence to allow the jury to decide whether the object falls within the class of objects the legislature characterizes as "deadly weapons." *Id.* Here, the Commonwealth presented the testimony of four victims, each of whom was either robbed at gun point by Appellant or situated closely thereto.

■ Tonya Brown, the clerk at Speedway, testified that Appellant approached the checkout counter to pay for a soft drink. Before Appellant left, he drew a "real" silver and black firearm and demanded money from the cash register, all while holding the gun two inches from Brown's face. This testimony established that Brown saw the gun, recognized it as "real," and described it as such. Therefore, we find that the Commonwealth introduced sufficient evidence to permit the jury to decide whether Appellant possessed a deadly weapon in connection with the Speedway robbery.

■ Megan Walker, a teller at River City Bank, testified that Appellant entered the bank, requested change for $100, and inquired about opening an account. Appellant turned as if to leave, but suddenly spun, drew a firearm, and ordered Walker to hand over the money. Walker testified that Appellant possessed a black gun. Two other River City Bank employees also witnessed this armed robbery. Josh Lightle testified that Appellant entered the bank and discussed opening an account, drew a gun from his person, and demanded money from the teller. Alisa Wilkins testified that she observed Appellant approach Walker's window and after some discussion, draw a "real" silver semi-automatic pistol. We find that the testimony of these three witnesses, describing Appellant's possession of a "real" silver or black, semi-automatic handgun, provided sufficient evidence for the jury to decide whether the Appellant was armed with a deadly weapon when he robbed River City Bank.

Consequently, we hold that the trial court did not err by denying Appellant's motion for a directed verdict, as we are unable to find that "under the evidence as a whole, it [was] clearly unreasonable for [the] jury to find guilt." *Benham,* 816 S.W.2d at 187.

### D. Admission of Hearsay

■ Appellant next contends that the trial court abused its discretion when it allowed a police officer to repeat another officer's hearsay statement. During Appellant's arrest, Detective Banta found part of the robbery proceeds, including several bait bills, in Appellant's pocket. Banta removed the money and laid it on the passenger seat of the truck. Due to a later, serious car accident, Banta was unable at trial to remember and testify about anything after stopping Appellant's vehicle. However, Sergeant Black testified that upon arriving on the scene, he noticed some bills lying on the front seat. Black testified that Detective Banta stated that

he found that money in Appellant's pocket. The trial court admitted Sergeant Black's testimony as a prior consistent statement over Appellant's hearsay objection. Appellant alleges this testimony prejudiced him as it was the only evidence linking him to the stolen currency.

The Commonwealth argues that the statement was admissible as a prior *inconsistent* statement because Banta stated to Black that he removed the currency from Appellant's pocket, and then, when asked at trial, testified he could not remember. In support of this position, the Commonwealth cites *Brock v. Commonwealth* wherein we declared, "[a] statement is inconsistent for purposes of KRE 801A(a)(1) whether the witness presently contradicts or denies the prior statement, or whether *he claims to be unable to remember it.*" 947 S.W.2d 24, 28 (Ky.1997) (emphasis added) (*citing Wise v. Commonwealth,* 600 S.W.2d 470 (Ky.App.1978)). While the Commonwealth is theoretically correct, it fails to recognize a crucial distinction between the present case and those it cites: the appearance of witness hostility.

Thus, we take this opportunity to clarify the use of the prior inconsistent statement hearsay exception in the context of a "forgetful" witness. In *Wise,* two witnesses gave statements to the police, but at trial, responded "I don't remember," to all the prosecution's questions. *Wise,* 600 S.W.2d at 472. As a result, the trial court admitted the witnesses' prior statements given to the police as prior inconsistent statements. *Id.* The Court of Appeals affirmed the admission of the statements under the prior inconsistent statement hearsay exception, finding the witnesses "obviously

hostile" in their attempt to defeat the prosecution. *Id.* Importantly, the court stated, "No person should have the power to obstruct the truth-finding process of a trial and defeat a prosecution by saying, 'I don't remember.'" *Id.; see also Jett v. Commonwealth,* 436 S.W.2d 788 (Ky.1969).

In a similar case, this Court utilized the *Wise* framework to evaluate whether the trial court correctly admitted, as prior inconsistent statements, a witness's statements to the police after she later claimed not remembering what she said. *Manning v. Commonwealth,* 23 S.W.3d 610 (2000). In *Manning,* the defendant confessed the details of a brutal murder to his common law wife. *Id.* at 612. The wife subsequently conveyed the full story to police detectives, who videotaped her statement; however, at trial she claimed she did not remember the statement. *Id.* The trial court allowed the Commonwealth to introduce the wife's videotaped statement as a prior inconsistent statement.[4] *Id.* Relying heavily on *Wise,* we affirmed the trial court's admission of the wife's videotaped statement as a prior inconsistent statement. *Id.* at 613.

 Therefore, the relevant inquiry in determining if a lack of memory is (or should be treated as) a prior inconsistent statement, is whether, within the context of the case, there is an appearance of hostility of the witness which is the driving force behind the witness's claim that he is unable to remember the statement. As the above cases demonstrate, the claimed lack of memory of the witness appeared to be a purposeful attempt to frustrate the search for the truth.[5] Within that context,

---

4. The defendant was convicted of first-degree manslaughter on the strength of that statement and circumstantial evidence from shell casings.

5. *See also People v. Alexander,* 49 Cal.4th 846, 113 Cal.Rptr.3d 190, 235 P.3d 873, 927 (2010) (holding that a witness's prior statements are admissible under the prior inconsistent statements if the court finds that the lack of memory is due to an unwillingness to cooperate).

a witness's claimed inability to remember a statement does amount to an inconsistent statement under KRE 801A(a)(1).

■ Thus, in the present case, we find that Detective Banta's statement was not admissible as either a prior inconsistent or consistent statement. The statement was not inconsistent as Banta, a law enforcement officer, was not hostile or unwilling to cooperate with the prosecution; rather, his lack of memory resulted from an unrelated physical injury; there was no appearance of, or even an argument for, any hostility on his part. Moreover, Banta's statement was not a consistent statement, as it is inconceivable that a statement from a police officer on direct examination by the Commonwealth, who cannot remember an event due to head trauma, is admissible as "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." KRE 801A(a)(2). Consequently, we find that the trial court erred in admitting Sergeant Black's testimony; however, the error was harmless.

■ We evaluate harmless error under one of two standards, depending on whether the error implicates a constitutional right. *Winstead v. Commonwealth,* 283 S.W.3d 678, 688–689 (Ky.2009). Appellant contends that the admission of this evidence violated his constitutional due process rights. However, we generally evaluate evidentiary errors under the non-constitutional "substantial influence" standard.[6] *Id.* Under this standard we must determine whether the error had "substantial influence" upon Appellant's trial such

that it "substantially swayed" his conviction. *Id.; see also* RCr 9.24.

In the present case, we have no difficulty finding that the admission of the hearsay testimony did not "substantially sway" the outcome of the case. Sergeant Black testified only to the currency and bait bills found on Appellant's person at the time of his arrest. In a vacuum, admission of this hearsay testimony could have substantial influence. However, in the present case, a plethora of evidence linked Appellant to the robberies and the money and satisfied all elements of the offense. KRS 515.020(b).

To briefly recite, Brown, the Speedway cashier, and Walker, the River City Bank teller, testified that Appellant entered each respective establishment, pointed a gun at each of them, demanded money, and both victims complied by handing over the currency. Furthermore, both victims positively identified Appellant as the robber due to their close proximity to Appellant during the robberies.[7] Consequently, the Commonwealth presented evidence that satisfied all elements of robbery in the first degree. KRS 515.020(b).

Appellant incorrectly argues that the prejudice from Sergeant Black's testimony is obvious, as no other testimony placed the money in his possession. However, possession of stolen goods is not an element of robbery in the first degree. As stated above, both Brown and Walker[8] testified that they gave him hundreds of dollars in currency out of fear for their safety. This testimony explicitly placed the stolen money in Appellant's possession.

6. The error in this case would be harmless even if we agreed with Appellant's contention and analyzed it under the standard applicable to constitutional errors, as there is no reasonable possibility that it contributed to his conviction. *Id.*

7. Two additional River City Bank employees identified Appellant as the perpetrator: one was positive, and the other 98% positive.

8. Wilkins, the River City Bank loan processor, also testified that she observed Walker give Appellant the money from the teller drawer.

Accordingly, we hold that the trial court's erroneous admission of Sergeant Black's testimony was harmless error.

### E. Detective Hickman's Testimony Connecting the Social Security Number with Appellant

■ Appellant next contends that the trial court erred in allowing Detective Hickman to testify that the Social Security number the robber gave to the bank teller was Appellant's. Appellant claims that this constituted hearsay, as Hickman lacked personal knowledge of this fact (Hickman acquired this knowledge from the National Crime Information Center (NCIC) and "other sources"). Moreover, no business records were introduced to support the testimony, thus nullifying the public records hearsay exception. KRE 803(8).

The Commonwealth responds by pointing out the trial court sustained Appellant's hearsay objection to Hickman's reference to the NCIC as one of his sources, yet overruled a later objection relating to improper foundation for Hickman's conclusion based on unnamed "other sources." Accordingly, the Commonwealth asserts that if Appellant is contending that Hickman disregarded the court's order and gave hearsay testimony, it was incumbent upon Appellant to request a mistrial or admonition, and thus Appellant waived the error. We disagree.

■ We review the admission of evidence for an abuse of discretion. *See Commonwealth v. King*, 950 S.W.2d 807, 809 (Ky.1997) ("It is a well-settled principle of Kentucky law that a trial court ruling with respect to the admission of evidence will not be reversed absent an abuse of discretion."). An abuse of discretion arises when the court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994).

Here, the trial court abused its discretion when it admitted Hickman's testimony regarding the Social Security number, as it was hearsay. The hearsay was the assertion "by unnamed sources" consulted by Hickman that the Social Security number belonged to Appellant. Furthermore, the statement was introduced for the truth of the matter asserted, i.e., the Social Security number belonged to Appellant. As a result we find that Hickman's testimony concerning information he received from these unnamed sources was hearsay. The assertion that the information was "gleaned" from "other sources," assumedly online databases, does not exclude it from being a statement for the purposes of the hearsay rule.[9] KRE 801(a).

■ It is axiomatic that hearsay is inadmissible unless it fits within an exception. KRE 802. Consequently, we find that the trial court abused its discretion when it allowed Hickman to testify that unnamed sources provided him with the information needed to associate the Social Security number used during the U.S. Bank robbery with Appellant.

Finally, we must evaluate whether erroneously admitted testimony was harmless error. As previously noted, evidentiary errors are evaluated under the non-constitutional "substantial influence" standard, wherein we determine whether the error had "substantial influence" upon Appellant's trial such that it "substantially swayed" his conviction. *Winstead*, 283 S.W.3d at 688–689; *See also* RCr 9.24. In this case, the victim could not make a

---

9. Several other means exist to prove one's Social Security number in conformance with the hearsay rule. KRE 803(8).

positive identification, thus the Social Security number was the only "linchpin" evidence linking Appellant to the robbery. Consequently, we have no difficulty finding that the erroneous admission of Hickman's testimony "substantially influenced" Appellant's trial in a manner that "substantially swayed" his conviction. As such, we reverse Appellant's second-degree robbery conviction, vacate that portion of his sentence, and remand for a new trial on this charge.

### F. Detective Banta's Reference to Appellant's Prior Contacts with Metro Police

█ In Appellant's final point, he claims the trial court erred when it overruled his objection to Banta's testimony, which alluded to Appellant's criminal past. Appellant argues that Banta's testimony was evidence of other crimes, wrongs, or acts, and was inadmissible under KRE 404(b). The Commonwealth responds by contending that no error occurred as Banta did not testify about any specific prior crimes or acts. We agree with Appellant's claim: Banta's testimony was inadmissible evidence of prior bad acts; however, its admission was harmless error.

On direct examination, Banta testified that he knew Appellant before their contact in connection with the current charges. Banta further testified that, on the day of the robberies, he observed Appellant acting suspiciously. Over Appellant's objection, the trial court permitted Banta to testify that while he was investigating an unrelated incident, he observed Appellant walk past his car. Banta thought Appellant recognized his car and changed course to walk in a different direction. Banta stated that "being familiar with Mr. Wiley I went back to our division to kind of check for his status, maybe being wanted or anything like that."

We find that the quoted part of Banta's testimony was a thinly-veiled reference to Appellant's criminal history and was not offered for another purpose. KRE 404(b)(1). While the Commonwealth is technically correct in contending that Banta did not specifically testify about Appellant's prior wrongs, the inference drawn by Banta's testimony is inescapable. Banta testified that he knew Appellant and as a result of his "familiar[ity] with Mr. Wiley, [he] went back [the police station]" to perform a status check to see if Appellant was "wanted or anything like that." This testimony directs the jury's attention to the fact that Appellant had prior criminal encounters with law enforcement and thus is inadmissible prior bad acts evidence. Allowing a witness to make suggestive references to the defendant's prior crimes, wrongs, or bad acts circumvents KRE 404(b)'s prohibition of evidence of other crimes. *See Matthews v. Commonwealth,* 163 S.W.3d 11, 17 (Ky.2005) (finding a statement calling the jury's attention to the defendant's prior incarceration inadmissible. The witness stated, "When I moved here, we didn't know [the defendant]. [Defendant] hadn't been out of prison that long."). As a result, we hold that Banta's suggestive statements violated KRE 404(b) and the trial court erred when it overruled Appellant's objection to those statements.

█ Although we find that the trial court erred, we find such error harmless. As stated above, evidentiary errors are evaluated under the non-constitutional "substantial influence" standard, wherein we determine whether the error had "substantial influence" upon Appellant's trial such that it "substantially swayed" his conviction. *Winstead,* 283 S.W.3d at 688–689; *see also* RCr 9.24.

With the above framework in mind, we determine that the erroneous part of Ban-

ta's testimony did not have substantial influence due to the great weight of admissible evidence identifying Appellant as the perpetrator. *Hill v. Brigano,* 199 F.3d 833, 847 (6th Cir.1999) (finding the erroneous admission of hearsay to be harmless error because, in light of the great weight of evidence against the defendant, the introduction of limited statements did not have any significant influence on the jury's decision-making process). We find *Anderson v. Commonwealth,* instructive due to the (frequent) similarities to the present case. 231 S.W.3d 117, 122 (Ky. 2007).

In *Anderson,* the trial court allowed a deputy to testify that the defendant responded to his questions regarding his involvement in a robbery by stating, "Do you think I'm stupid, I just got out of prison for the same thing. I'm not saying anything, I'm going to ride this one out." *Id.* at 119. We found this testimony inadmissible, as its sole purpose was to inform the jury of appellant's previous incarceration for similar criminal activity. *Id.* at 120. However, we found this error trivial, considering that three eyewitnesses testified against appellant as well as the Commonwealth's introduction of ample circumstantial evidence. *Id.* at 122

The evidence in the present case is comparable to that in *Anderson:* multiple witnesses identified Appellant as the bank robber and gunman. As in *Anderson,* when considering the vast evidence in this case, given by multiple witnesses, we cannot conclude that Banta's suggestive testimony had substantial influence upon Appellant's trial such that it substantially swayed his conviction. Consequently, we find this error harmless.

### III. *Conclusion*

For the foregoing reasons, we reverse and vacate Appellant's sentence insofar as the requirements to pay court costs, resti-

tution, and his nine-year sentence for the second-degree robbery conviction, but otherwise affirm his conviction and sentence.

All sitting. All concur.