ACREE, JUDGE:
*595 Debbie Brinson appeals the Jefferson Circuit Court's March 22, 2017 order of restitution. Brinson argues the circuit court was required to identify the factual basis for its restitution order pursuant to CR[1] 52.01. We agree. Accordingly, we vacate the circuit court's order and remand for additional proceedings as explained herein.
FACTS AND PROCEDURE
Brinson was indicted for one count of theft by unlawful taking of property valued over $ 500.00 but less than $ 10,000.00. The charge stemmed from her alleged theft of money belonging to her former employer, Once Upon a Child. Specifically, the Commonwealth alleged Brinson entered data into the store computer system falsely indicating payouts to customers, then keeping the amount of the false payout for herself.
Pursuant to an agreement with the Commonwealth, Brinson entered a plea of guilty to the indicted charge. The circuit court imposed a sentence, in accordance with the Commonwealth's recommendation, of one-year imprisonment, diverted for three years, on the condition that Brinson pay restitution. Brinson agreed to pay restitution, but disputed the amount owed.
A restitution hearing was held on March 21, 2017. Kimberly Barry was the Commonwealth's only witness. Barry is the regional manager who oversees the Once Upon a Child store at issue along with five other retail stores. Barry testified loss prevention, theft, accounting, and store inventory are all within her purview, and she "will do anything within the four walls of the store" in her capacity as a regional manager.
Barry testified that Once Upon a Child stores both buy and sell gently used goods from and to their customers. Customers bring used products, such as clothing, accessories, shoes, and other items, into the store to sell to Once Upon a Child. Store employees review the items and purchase the products from the customer to then sell in the store to other customers.
Barry explained that the key to the business is data files known as "Inser" files. The Inser file accounts for "every single item that every employee in the store purchases every single day from start to finish 365 days of the year." The program allows each item to be sorted by date of purchase, and shows "how much the customer received, how much we would sell the product for, what the item was," and whether the item was sold to a new customer or "cycled-counted out, which means at the end of the year, when we ran an inventory, it was not there." Barry clarified that when purchasing goods from a customer, the customer would be paid out "immediately." She also explained that at the end of the year each store would conduct an *596 inventory. When an item was unsold but not physically in the store to be scanned because it was stolen, missing, or for some other unknown reason, it was "cycled out." Barry clarified that cycle-counted out meant an item was physically missing, as opposed to having been sold to a customer.
Brinson's Inser files were collated into a chart with columns.[2] The chart contained those goods attributed to Brinson that had been "cycled-counted out." Barry clarified that once an employee logs into the store computer system, that employee's initials are automatically and numerically tagged in the Inser files for all subsequent buys. Barry testified that an inspection of the Inser files showed a theft by Brinson of $ 4,699.64. She calculated the amount based on seven months' worth of data and took into account the natural loss of six to seven hundred dollars per year, regardless.
The mechanism of theft is "as simple as filling out a slip that the customer is required to fill out, with fake information, typing the product into the computer system, and then paying herself out for those items." An unalterable characteristic of the Inser database is that items purchased from a customer would be listed in numerical order. Barry testified Brinson's Inser files revealed a pattern of groups of eight to ten items in numerical order that were cycle-counted out. She described this as highly unusual. "Usually, when you're missing something, when it's just a natural loss with shoplifting, or you just randomly miss a tag, you might have one item missing here, one item missing there, you're never going to have 6, 7, 8, 9, 10 items missing in a row." Also attributable to Brinson was the loss of ten items per day, whereas a normal employee would have a loss of one to two items per day. Barry testified she had observed several video clips of Brinson engaging in theft but did not bring those clips to the restitution hearing.
Brinson testified in her defense. She admitted she stole approximately $ 600.00, but no more. Brinson stated she would know the figure better than Barry or the Inser file data because she was the one who committed the thefts. She testified she often left herself logged into a computer terminal, a practice Barry stated Once Upon a Child highly discouraged. Brinson testified that she would have only completed a fraudulent transaction for a "high dollar" item like a stroller, not several individual transactions each for smaller items and amounts.
At the close of the evidence, Brinson requested the opportunity for argument, either orally on the record or in writing. The circuit court said Brinson was welcome to file a written brief, but its ruling may beat the filing. It then permitted the parties to briefly argue their respective positions.
The day after the hearing, the circuit court entered a form restitution order that Brinson pay $ 4,699.64 in restitution, the full amount requested by the Commonwealth. The order stated, "The Court has found a factual predicate for the payment *597 of restitution as follows: 'Restitution hearing conducted 3-21-17.' " (R. 24). It also states, "Defendant's 1[-]year sentence is probated/diverted for a period of 3 years or until restitution is paid in full, whichever is longer" and "the Defendant has been informed that it is necessary that [her] probationary period extend beyond the five years until restitution is paid in full." (R. 24, 25).
Brinson filed a CR 59.05 motion to alter or amend the restitution order. She requested that the circuit court provide factual findings to support its decision, argued that the order must be vacated as it was not supported by substantial evidence, and objected to any extension of her diversion period. The circuit court denied the motion. Brinson appealed.
STANDARD OF REVIEW
"[T]he issue of restitution [rests] solely within the discretion of the trial court." Donovan v. Commonwealth , 376 S.W.3d 628, 631 (Ky. App. 2012). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Commonwealth v. English, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).
ANALYSIS
Brinson submits three arguments for our consideration. First, that the circuit court erred in failing to make factual findings in support of the restitution order. Second, that the amount of restitution ordered is not supported by substantial evidence. And, third, that the circuit court erred by unnecessarily extending Brinson's diversion until restitution is paid in full. We find Brinson's first argument dispositive. We need not reach her remaining arguments.
Brinson first contends that the restitution order must be vacated as it violates CR 52.01, which mandates that the circuit court make findings of fact to support its decision. We agree.
CR 52.01 provides, in relevant part, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]" While much has been written on the basic due process standards which must be applied when restitution is assessed and imposed as one of the sentencing alternatives under KRS[3] Chapters 532 and 533, see Jones v. Commonwealth , 382 S.W.3d 22, 31 (Ky. 2011) ; Wiley v. Commonwealth , 348 S.W.3d 570 (Ky. 2010) ; Donovan , 376 S.W.3d at 628 ; and Fields v. Commonwealth , 123 S.W.3d 914 (Ky. App. 2003), our courts have not specifically addressed the applicability of CR 52.01 to criminal restitution.[4] This appears to be an issue of first impression.
KRS 532.032[5] and 533.030(3)[6] provide the trial court in a criminal case with the *598 statutory authority to order the defendant to pay restitution. Hearn v. Commonwealth , 80 S.W.3d 432, 436 (Ky. 2002) ("The trial court has the statutory authority to establish restitution and is in the best position to make the appropriate and well-informed decision in a fair and impartial manner."). In fact, when imposing a sentence of conditional discharge, restitution is a mandatory component of the sentence when the victim has suffered a monetary loss. KRS 533.030(3).
KRS 532.033 identifies what must be included in an order of restitution. It requires the trial judge to:
(1) Order the restitution to be paid to a specific person or organization through the circuit clerk, who shall disburse the moneys as ordered by the court;
(2) Be responsible for overseeing the collection of restitution;
(3) Set the amount of restitution paid;
(4) Set the amount and frequency of each restitution payment or require the payment to be made in a lump sum[.]
KRS 532.033. Subsection (3) clearly mandates that the trial judge calculate the amount of restitution to be paid by the defendant. The circuit court is operating as the fact finder. Donovan , 376 S.W.3d at 631. Accordingly, we review the circuit court's factual findings for clear error. Id. A factual finding is not clearly erroneous provided it is supported by substantial evidence - that is, evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. Id. (citation omitted). The question is: must the trial judge make written or oral factual findings to support its calculation?
"[I]mplicit in our statutory scheme requiring restitution is an adversary hearing, ordinarily conducted in conjunction with the final sentencing hearing, at which the trial court will have broad discretion to make findings based upon reliable information, but not be bound by the rules of evidence or traditional rules of pleading." Jones , 382 S.W.3d at 31 (emphasis added). In some cases, the amount of restitution will be "readily ascertained and easily verified" or even agreed to by the defendant. Id. When this occurs, the issue can be "summarily resolved with minimal formality and with practical efficiency." Id.
But not every disputed issue of restitution lends itself to summary disposition in a perfunctory proceeding like the traditional sentencing hearing. Id. In these more complex cases where the factual issues cannot be reliably resolved in a summary fashion, the circuit court must conduct an adversarial hearing protected by minimal constitutional due process, including:
• reasonable notice to the defendant in advance of the sentencing hearing of the amount of restitution claimed and of the nature of the expenses for which restitution is claimed; and
• a hearing before a disinterested and impartial judge that includes a reasonable opportunity for the defendant, with assistance of counsel, to examine the evidence or other information presented in support of an order of restitution; and *599 • a reasonable opportunity for the defendant with assistance of counsel to present evidence or other information to rebut the claim of restitution and the amount thereof; and
• the burden shall be upon the Commonwealth to establish the validity of the claim for restitution and the amount of restitution by a preponderance of the evidence, and findings with regard to the imposition of restitution must be supported by substantial evidence.
Id. at 31-32 (emphasis added); Mitchell v. Commonwealth , 538 S.W.3d 326, 328 (Ky. App. 2017) ("When the amount of restitution has not been agreed upon by the Commonwealth and the defendant, the trial court is required to conduct an adversarial hearing that satisfies due process.").
In this case, the circuit court found restitution could not be summarily resolved and, instead, held a full adversarial hearing. This involved the presentation of conflicting witness testimony, the taking of documentary evidence, and brief closing arguments by counsel. Our subsequent discussion of the applicability of CR 52.01, then, relates only to when an adversarial hearing is held, not when the circuit court summarily resolves the issue of restitution.
Turning back to CR 52.01, we again note that the rule applies to "all actions tried upon the facts without a jury[.]" In Anderson v. Johnson , 350 S.W.3d 453 (Ky. 2011), our Supreme Court defined "actions tried upon the facts without a jury" to mean "actions in which any factual findings must be made by the court [.]" Id. at 455. Anderson involved the applicability of CR 52.01 to a motion for modification of timesharing. Admittedly, timesharing modification and criminal restitution hardly lend themselves to an apples-to-apples comparison. But the underlying principles are applicable to both proceedings.
We know from Jones and other cases discussing the constitutional due process implications applicable to restitution that an adversarial restitution hearing is an action in which factual findings must be made by the court. Jones , 382 S.W.3d at 32 (circuit court must make "findings with regard to the imposition of restitution" and those findings "must be supported by substantial evidence"); Wiley , 348 S.W.3d at 575 ("When ordering restitution, a trial court must base an award on reliable facts."); Fields , 123 S.W.3d at 917 ("sentencing decisions" must "be based on facts with some minimal assurance of reliability"). It qualifies, then, as an action "tried upon the facts without a jury" within the meaning of CR 52.01.
The Court in Anderson reasoned CR 52.01 applicable to a motion for modification of timesharing because the requisite hearing involved proof, witnesses, and argument with the judge acting as the "finder of fact, the concluder on what law applies, and the giver of an order." Anderson , 350 S.W.3d at 455. An adversarial hearing to establish restitution, as described above, also involves the taking of proof, witness testimony, and argument. See Jones , 382 S.W.3d at 31-32.
The Supreme Court further found CR 52.01 applicable because the basis for a modification decision is fact-driven rather than law-driven. Anderson , 350 S.W.3d at 455. Meaningful appellate review of a family court's timesharing modification decision requires a clear statement of the "facts the judge relied on in order to determine whether he has made a mistake of fact, or to even determine if he is right at law, but for the wrong facts. If a judge must choose between facts, it is clearly relevant which facts supported his opinion." Id.
A circuit court's calculation of restitution is similarly fact-driven. When the facts are complex, the circuit court *600 must weigh the evidence and testimony presented during the adversarial hearing in determining which evidence it finds most reliable and upon which it chooses to base its decision. Unless the circuit court provides findings of fact, the review function of the appellate courts is frustrated. The reviewing court is not at liberty to speculate as to the evidentiary support for the trial court's factual findings.
Leaving Anderson and turning back to Jones , we find additional support for our conclusion that the circuit court must provide written or oral findings supporting its restitution order. Our Supreme Court relied upon the due process considerations applied in other areas of criminal law in forming its opinion as to the constitutional protections owed in restitution matters. It pointed specifically to the requirements for those facing the possible deprivation of liberty in a probation or parole revocation, noting in those proceedings that the trial court must establish "a record of written or recorded find[ings] as to the evidence relied upon and reason or revoking probation or parole." Jones , 382 S.W.3d at 31 n.13.
Reflecting on the authority discussed above and in the interest of fairness and substantial justice, we see no reason why CR 52.01 should not apply to adversarial restitution matters. Trial courts are constitutionally required to make factual findings to support their restitution orders. See Jones , 382 S.W.3d at 32 (circuit court must make "findings with regard to the imposition of restitution" and those findings "must be supported by substantial evidence"); Wiley , 348 S.W.3d at 575 ; Fields , 123 S.W.3d at 917. Thus, adversarial hearings fall within the parameters of an action tried upon the facts with a jury under CR 52.01. Anderson , 350 S.W.3d at 455 (defining "actions tried upon the facts without a jury" to mean "actions in which any factual findings must be made by the court ") (emphasis original). Just as when modifying timesharing or revoking probation, when calculating restitution a record of written or recorded findings as to the evidence relied upon and reason for establishing the amount of restitution is both warranted and necessary to apprise the parties and appellate courts of the basis for the circuit court's decision.
Accordingly, we hold that when ordering criminal restitution following an adversarial hearing, the circuit court must expressly set out its findings either on the record or in its written restitution order. R.S. v. Commonwealth , 423 S.W.3d 178, 190 (Ky. 2014) ("Oral findings on the record when entering a restitution order are sufficient.").
In the case before us, the form restitution order used by the circuit court included the following sentence, "The Court has found a factual predicate for the payment of restitution as follows: ...." It then leaves space for the circuit court to identify the factual basis for its decision. Here, the circuit court merely wrote "restitution hearing conducted 3-21-17." We think this insufficient. We have also reviewed the adversarial hearing and find no oral findings captured on the record. This is not to say that the circuit court must identify in detailed fashion its factual findings. As in probation revocation hearings, a short statement of the factual basis for the trial court's decision will suffice. This requirement is not unduly burdensome.
Accordingly, we vacate the Jefferson Circuit Court's March 22, 2017 restitution order and remand for additional proceedings. On remand, we direct the circuit *601 court to identify the factual basis for the payment of restitution, including the amount of restitution calculated. Whether a supplemental hearing is necessary to satisfy this mandate is left to the discretion of the circuit court.
LAMBERT, J., JUDGE, CONCURS.
CLAYTON, CHIEF JUDGE, CONCURS IN RESULT ONLY.

Kentucky Rules of Civil Procedure.

Column A contained each unique bar code number given for each item in the store. Column B contained the date the good was purchased from the customer. Column C contained the date the good was either sold or cycle counted out - unsold but counted missing - from the system. Column D contained the unique "buy number" for each item that was entered into the system. Column E contained the amount the customer was paid for the good. Column F contained the amount the store would have resold the good for to another customer. Column G contained the identity of the employee who purchased the good from the customer and who logged the good into the system. Column H is a description of the good. And Column I indicates whether an item was sold or cycled out.

Kentucky Revised Statutes.

We are mindful that we are applying a civil rule in a criminal case. However, "[t]he Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure." Kentucky Rules of Criminal Procedure (RCr) 13.04. We see nothing in our criminal rules that conflicts with CR 52.01. See, e.g., Simpson v. Commonwealth , 474 S.W.3d 544, 547 (Ky. 2015) (applying CR 52.01 to determine the appellate review standard governing pretrial motions to suppress evidence).

KRS 532.032(1) provides: "Restitution to a named victim, if there is a named victim, shall be ordered in a manner consistent, insofar as possible, with the provisions of this section and KRS 439.563, 532.033, 533.020, and 533.030 in addition to any other part of the penalty for any offense under this chapter. The provisions of this section shall not be subject to suspension or nonimposition."

The statute states, in relevant part: "When imposing a sentence of probation or conditional discharge in a case where a victim of a crime has suffered monetary damage as a result of the crime due to his property having been converted, stolen, or unlawfully obtained ... the court shall order the defendant to make restitution in addition to any other penalty provided for the commission of the offense." KRS 533.030(3).