# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 24, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0201-MR

ANTONIO J. BROWN                                  APPELLANT

ON APPEAL FROM BOONE CIRCUIT COURT
V.                HON. RICHARD A. BRUEGGEMANN, JUDGE
NO. 22-CR-00333

COMMONWEALTH OF KENTUCKY                   APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING IN PART, REVERSING IN PART</u>**

Antonio Brown pled guilty to several felonies, including robbery and assault in the first degree, without any recommendation by the Commonwealth.[1] At the final sentencing, the trial court sentenced Brown to a total of thirty-five years in prison. Brown is now challenging the trial court's sentencing as an abuse of discretion and its award of restitution. After review, we hereby affirm the sentence imposed by the Boone Circuit Court but reverse and remand for a hearing to determine the amount of restitution.

## I. FACTS AND PROCEDURAL HISTORY

On November 4, 2020, Antonio Brown was sixteen years old. He and three unknown accomplices entered a home in Burlington armed with handguns. Present in the home were Benjamin Tabakovich, his mother, Tifetta and his younger brother, Eddie, age nine. Holding them at gunpoint, Brown

---

[1] Colloquially known as a "blind plea."

demanded the keys to their car in the garage and cash. Benjamin was seated on the couch and begged them to leave when Brown struck him in the face with the gun. As blood dripped down his face, the startled Benjamin instinctively stood up. Brown then fired a round from a 40-caliber handgun into the ceiling. Benjamin suffered extensive injuries to his face including deep lacerations, a deviated nasal septum, a supraorbital fracture, broken nose, subconjunctival hemorrhage, and a collapsed frontal sinus cavity. He later required bifrontal craniotomy surgery to insert a plate over the sinus cavity in his forehead.

After watching her son endure this, Tifetta stood up and told them to "Get out of my house," pushing them toward the door and telling them the police were on the way. One of Brown's accomplices tried taking Eddie's laptop from him but relented when Eddie grabbed it back. When they left, they stole a 2013 Dodge Charger from the driveway instead of the Toyota Supra they initially demanded. After they left, Benjamin grabbed his iPhone and attempted to call 911 but the facial recognition feature could not work because of the great extent of his injuries. After three attempts, he finally had to enter his password manually.

On May 24, 2022, Brown was indicted by a Boone County grand jury for first-degree robbery, second-degree assault, three counts of first-degree wanton endangerment and theft by unlawful taking of property valued at $1,000 or more. The grand jury later returned a superseding indictment upgrading the assault charge to assault in the first degree.

2

The Commonwealth and Brown were in settlement discussions regarding a fifteen-year plea offer contingent on Brown's cooperation against his unknown accomplices; however, the Tabakovich family rejected any offers. Brown then chose to enter a blind guilty plea to all the charges. On January 30, 2023, Brown, through counsel, admitted the factual basis of the indictment as follows:

> Judge, may I assist? Judge, Mr. Brown entered a home here in Burlington, KY with a firearm in attempt to locate the keys for a motor vehicle that was parked in the garage. During the course of that, he was armed. He pistol-whipped one of the individuals inside the home, causing serious physical injury. He shot, fired a round into the ceiling of the home. There was three people inside the home. So that's the three counts of unlawful imprisonment and the three counts of wanton endangerment, are for the firearm and for them being held at gunpoint in their home and for the shot fired into the ceiling. The robbery is for the entering of the home at gunpoint in order to take the vehicle. The vehicle was ultimately taken from the garage by Mr. Brown, Judge, so that accounts for the robbery and the theft, and then the assault first is for the pistol whip.

The court then asked Brown personally, "Do you acknowledge all of that is true?" Brown answered, "Yes, sir." The trial court accepted Brown's guilty plea and final sentencing took place on March 31, 2023.

During sentencing, Brown called a number of witnesses. The first to testify was Dr. Lawrence Steinberg, a renowned developmental psychologist who specializes in adolescent brain development. Dr. Steinberg, after being qualified as an expert by the trial court testified to the following about the differences between adults and juveniles:

> The first is that compared to adults, adolescents are more impulsive in the way that they make decisions. The second is that compared to adults, adolescents are more oriented toward the

3

immediate and less likely to consider the future consequences of their decisions and actions. The third is that compared to adults, adolescents are more motivated by reward relative to the degree to which they're motivated by costs or punishment. The fourth is that compared to adults, adolescents are more susceptible to the influence of others, especially peers. And the last one is that compared to adults, adolescents are less fully formed. Their personalities are still developing.

Dr. Steinberg admitted that he had not interviewed or examined Brown. He stated that "My intention was to provide information to educate the court on the science of adolescent psychological and brain development and not to opine about legal policy."

Defense then called Dr. Ed Conner, a psychologist licensed in Kentucky, Ohio, and Indiana. Dr. Conner met with Brown and testified that Brown was authentically remorseful. Dr. Conner also opined that Brown could be treated in the community with therapy, vocational training, and treatment compliance. Brown, also read a letter apologizing to the victims regretting his participation in these events.

Benjamin Tabakovich also testified to the events of that day and the injuries he sustained.[2] Detective Angeline Bouchard of the Boone County Sheriff's Department responded to the call and was the lead investigator of the case.[3] The Tabakoviches gave descriptions of the suspects as young, short, thin black males. A 40-caliber casing was recovered from the living room. Detective

---

[2] Benjamin's testimony forms the basis for the facts as detailed above in the opinion.

[3] It is unnecessary to recount all the facts from her testimony as Brown acknowledged the factual basis for his plea of guilty. We will provide a basic outline of the facts of the investigation.

Bouchard canvassed the neighborhood and was able to obtain surveillance footage. The footage shows the Tabakovich's stolen Dodge Charger followed by a silver Jeep Cherokee.

The Boone County Sherriff's Office collaborated with numerous police agencies from the area, including Ohio, who were investigating a number of robberies in which Brown and his associates were implicated. A search warrant was obtained for a residence in Cincinnati, the owner was the father of a known associate of Brown. Brown was located in the home along with a 40-caliber handgun along with five other handguns and stolen merchandise from other robberies. The casing recovered from the Tabakovich house was a match for the 40-caliber handgun. Brown's fingerprints were found on the magazine of this gun. A piece of Benjamin's flesh was found on the 40-caliber gun and confirmed to be his through DNA testing. The Dodge Charger was recovered in a nearby parking lot and the silver Jeep Cherokee was located in Covington with the Tabakoviches's keys to the Dodge located inside.

At the conclusion of the sentencing hearing the trial court sentenced Brown to twenty years on both the assault in the first degree and robbery in the first degree to run concurrently with each other; five years each for the three counts of unlawful imprisonment run consecutively with each other and the twenty-year sentences, while the remaining charges he ordered to be run concurrently for a total sentence of thirty-five years.[4] The trial court also

---

[4] Brown was age 19 at the time of his sentencing.

determined that probation would unduly depreciate the seriousness of the crimes and incarceration was necessary for the protection of the public.

On April 10, Brown filed a motion for written findings of fact and conclusions of law. The trial court thereafter entered a final judgment on April 12, 2023. Brown moved under CR 59.05 to alter, amend, or vacate the judgment. Brown challenged the trial court's finding that Brown "presented no basis to mitigate the brutality of the underlying crimes, or under which any other person could be deemed the principal instigator or actor. Rather, Defendant has chosen to shield his accomplices." Brown argued that the trial court erred in this finding because the Commonwealth could not prove who among the four assaulted Benjamin nor show that Brown was the primary actor based on the evidence presented at sentencing. Brown also argued in this motion that he was prepared to cooperate with authorities in order to receive a fifteen-year sentence, but the victims would not acquiesce to this plea agreement.

The Commonwealth in its response argued that it was Brown himself, during his entry of his plea, that provided the evidence that he was the primary actor who wielded that weapon and struck Benjamin. The Commonwealth also argued that the time to present any evidence that Brown was prepared to cooperate was during either his plea hearing or final sentencing. In its order denying relief under CR 59.05, the trial court pointed to the fingerprints and DNA evidence on the weapon that provided a direct link between Brown and Benjamin Tabakovich to rebut Brown's assertions. The trial court also pointed

6

to Brown's acknowledgment of the facts that formed the basis of the charges during his plea allocution. The trial court defended its characterization of Brown's choice to shield his accomplices as rooted in the Defendant's counsel's statement during sentencing that Brown "is here taking responsibility for the actions of all four." The trial court also explained that the "defendant's subjective reason for shielding his co-actors was not central to the Court's findings . . . ." Brown filed a timely appeal so now we discuss the merits of the case.

## II.   ANALYSIS

Brown argues that the trial court abused its discretion when it failed to grant him probation and instead ordered him to serve a sentence of incarceration. Brown additionally argues that the trial court erred when it imposed restitution in the amount of $1,667.85.

Sentencing issues are reviewed for an abuse of discretion. *Howard v. Commonwealth,* 496 S.W.3d 471, 475 (Ky. 2016). Appellate courts review a trial court's decision under this standard to determine if it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).[5]

---

[5] The Commonwealth also argues that Brown waived his right to appeal by entering a guilty plea citing *Hayes v. Commonwealth,* 627 S.W.3d 857, 863 (Ky. 2021). In that case this Court held that defendant's sentencing issue was not appealable but also reached the conclusion that Hayes' sentence was not an abuse of discretion. In *Hayes* we explained a "'sentencing issue' which may be appealed is a claim that a sentencing decision is contrary to statute, such as when an imposed sentence is longer than allowed by statute for the crime, or a claim that the decision was made without fully considering the statutorily-allowed sentencing options." *Id.* at 862 (citing *Grigsby v. Commonwealth,* 302 S.W.3d 52, 54 (Ky. 2010)). Since Brown now argues the trial

The sentencing policy of this Commonwealth is established by the General Assembly. KRS[6] 532.007(1) sets forth that policy, in part, as follows:

> (1) The primary objective of sentencing shall be to maintain public safety and hold offenders accountable while reducing recidivism and criminal behavior and improving outcomes for those offenders who are sentenced;
>
> (2) Reduction of recidivism and criminal behavior is a key measure of the performance of the criminal justice system;
>
> (3) Sentencing judges shall consider:
>
> > (a) Beginning July 1, 2013, the results of a defendant's risk and needs assessment included in the presentence investigation; and
> >
> > (b) The likely impact of a potential sentence on the reduction of the defendant's potential future criminal behavior;

The General Assembly also spells out the factors sentencing courts must weigh when considering whether to grant probation in each case. KRS 533.010(2) states:

> (2) Before imposition of a sentence of imprisonment, the court shall consider probation, probation with an alternative sentencing plan, or conditional discharge. Unless the defendant is a violent felon as defined in KRS 439.3401[7] or a statute prohibits probation, shock probation, or conditional discharge, after due consideration of the defendant's risk and needs assessment, nature and circumstances of the crime, and the history, character, and condition of the defendant, probation or conditional discharge shall be granted, unless the court is of the opinion that imprisonment is necessary for protection of the public because:

court weighed impermissible facts when refusing to grant probation, we will consider whether the trial court abused its discretion when sentencing him.

[6] Kentucky Revised Statutes

[7] Both parties agree that under *Merriman v. Commonwealth,* 265 S.W.3d 196 (Ky. 2008), as a Youthful Offender, Brown is not considered a Violent Offender under this statute.

(a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime;

(b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

Brown argued below, and here before this Court, that the trial court erred by not granting probation and cites several statements from the court below. As noted above, the trial court pointed out that Brown chose to "take the fall" for his accomplices and "presented no basis to mitigate the brutality of the underlying crimes, or under which any other person could be deemed the principal instigator or actor. Rather, Defendant has chosen to shield his accomplices."

Brown argues that he was willing to cooperate against his accomplices but was frustrated in his attempts to do so by the Commonwealth's inability to convince the victims in this case to agree to such a disposition. Brown is correct when stating that usually cooperation is part of bargained for consideration in an attempt to arrive at a negotiated settlement. But here it should be noted that it is not required. For it was certainly possible for Brown to assist in the investigation as part of the defense strategy of pleading guilty. But, as the trial court pointed out in its order denying relief under CR 59.05, the "defendants subjective reason for shielding his co-actors was not central to

9

the Court's findings . . . ." Here it is worth quoting at length from this Court's

decision in *Howard v. Commonwealth:*

> Kentucky statutory law affords trial courts **immense discretion** in setting criminal penalties. As the Commonwealth correctly acknowledges, trial courts retain discretion in decreasing unduly harsh sentences, in granting or denying probation, and in determining whether a defendant should serve sentences concurrently or consecutively.

496 S.W.3d at 475 (internal citations omitted) (emphasis added). Brown can

certainly disagree, but the lower court, in the discretion afforded to it, found

that Brown was not suitable for probation. In its sentencing order, the trial

court gave consideration to a sentence of probation but decided against it

because it found that Brown would likely reoffend; that Brown was in need of

correctional treatment that only incarceration could provide; that probation

would unduly depreciate the seriousness of the crime; and that probation is

not in the best interest of the public or defendant. This Court holds that the

trial court did not abuse its discretion in imposing Brown's sentence.[8]

Brown also argues the trial court erred when it imposed restitution in the

amount of $1,667.85.[9] This Court held in *Wiley v. Commonwealth,* defendants

were entitled "have some meaningful opportunity to be heard and the record

must establish a factual predicate for the restitution order." 348 S.W.3d 570,

---

[8] Brown cites a number of Supreme Court cases regarding the sentencing of juvenile defendants, but also concedes that the sentence imposed on Brown does not run afoul of any of them. Neither does Brown make any Eighth Amendment claim. As such, this Court will not address them.

[9] The Commonwealth argues this issue was waived and although cites a number of cases in support this proposition, none of the cases cited involve the issue of restitution.

576 (Ky. 2010) (citing *Fields v. Commonwealth,* 123 S.W.3d 914, 918 (Ky. App. 2003)).

Brown concedes that this issue is unpreserved.[10] Consequently, this Court will review this issue using the palpable error standard under RCr[11] 10.26. *Early v. Commonwealth,* 470 S.W.3d 729, 737 (Ky. 2015). For an error to be palpable it must be "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006). An unpreserved error may be corrected on appeal if failure to do so would cause a manifest injustice. *Commonwealth v. Goss,* 428 S.W.3d 619, 626-627 (Ky. 2014). This is an error that if it remained uncorrected, there would be a likelihood of a different result, or call into question the defendant's right to due process. *Id.* at 627.

Although Benjamin testified about the extent of his severe injuries, no finite amount regarding his medical expenses was ever introduced as evidence before the trial court. As noted above, *Wiley* requires "the record must establish a factual predicate for the restitution order." 348 S.W.3d at 576. As such, this Court remands the issue of restitution to the trial court below for a rehearing.

### III.    CONCLUSION

Based on the foregoing, we affirm the trial court as it did not abuse its discretion when denying Brown probation and imposing its sentence of thirty-

---

[10] Our decision in *Wiley* was also reviewed under the palpable error standard.

[11] Kentucky Rules of Criminal Procedure.

11

five years. We do reverse the restitution award and remand this issue for a hearing that comports with due process.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General