# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 15, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0539-MR

JOSEPH F. SMITH                                                APPELLANT

|  | ON APPEAL FROM MARION CIRCUIT COURT |
|---|---|
| V. | HONORABLE SAMUEL TODD SPALDING, JUDGE |
|  | NO. 19-CR-00259 |

COMMONWEALTH OF KENTUCKY                             APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Marion County jury convicted Joseph F. Smith of sodomy in the first degree, criminal attempt to commit rape in the first degree, and terroristic threatening. Smith was sentenced to twenty years in prison. This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the arguments of the parties, we affirm the Marion Circuit Court.

## I.  BACKGROUND

On the night of November 3, 2019, J.A.[1] was in her bedroom at her home which she shared with her adult son, Joey, and her sister, Roberta. Other people often stayed at the house, including Janice who was Roberta's daughter

---

[1] We identify the victim by her initials for her privacy. We have also chosen to identify all witnesses by only their first names to assist in maintaining the privacy of the victim.

and J.A.'s niece. On the night of November 3, when J.A. went to bed, several people were present in the home, including Joey and two other individuals who often stayed at the house, April and Shoney. At some point, J.A. believed everyone had left her house, and she left her bedroom to use the restroom. She saw someone sitting in her living room. Although she did not know who it was at the time because she did not have her glasses on, she later determined it was Smith. Smith had dated her niece, Janice, for a period of time but had been banished from the house a few months prior, after getting into an argument with J.A.'s children.

After J.A. returned to her bedroom, Smith knocked on her bedroom door and politely asked for a cigarette. She gave him one, and he thanked her. When he left the room, J.A. shut her bedroom door and locked it. Shortly thereafter, Smith forced his way into J.A.'s bedroom. He placed his hand on J.A.'s neck and unsuccessfully attempted to forcefully insert his penis into her vagina. J.A. became so nervous that she defecated on herself and Smith. This enraged Smith so much that he then forced J.A. to use her mouth to clean the defecation from his penis. At some point during these events, J.A. said, "Joseph, stop." Smith responded, "I'm not going to stop until I get what I want."

J.A. heard someone come into the house, and she began to yell for help. Roberta, a man named Jesus, and another woman had come back to the house to check on Roberta's dog. When Roberta heard her sister's shouts for help, she tried to open J.A.'s bedroom door, but Smith closed it in her face. Roberta tried again to open the door, and Smith again closed it in her face. Smith then told

2

J.A. to tell Roberta to let him leave or else he would kill J.A. J.A. did as she was told, and Smith ran out of the house. By this time, Roberta was outside of the house seeking help. She saw Smith, although she did not identify him as such at trial, run around the house with his pants down.

Roberta then rushed into J.A.'s bedroom and wrapped J.A. in a blanket. J.A. had on no clothes other than a single sock. Feces was on the bed, blanket, sock, J.A.'s body, face, and in her hair. Roberta walked J.A. to the home of Santana, Roberta's other daughter, who lived just behind J.A. Santana then drove J.A. to the emergency room at Spring View Hospital. In the emergency room, Nurse Karen Rogers and Doctor Stephen Grover collected samples from J.A. for a sexual assault evidence collection kit. A swab was taken of J.A.'s face because J.A. told Nurse Rogers that Smith had spit on her. This swab was eventually tested for saliva, and the results were presumptive positive. The swab was then DNA tested. The DNA test showed a mixture of DNA from two individuals. Once J.A.'s DNA was accounted for, Smith was shown to be a contributor to the mixture.

Lebanon Police Officer Daylon Moore responded to the hospital and took a statement from J.A. He then went to Santana's house to speak with Roberta. He asked Roberta if she recognized or knew the name of the man who ran out of J.A.'s house. Roberta said that the man's name was "Joseph Something," but she did not know his last name.

Officer Moore was eventually able to identify Smith as the perpetrator and obtained an arrest warrant for him. Lebanon Police received a tip regarding

3

Smith's location, and Sergeant Henry Keene went there to attempt to locate and arrest Smith. Sergeant Keene arrived at the apartment with two other officers and knocked loudly on the door for two to three minutes while announcing they were with the Lebanon Police. No one answered the door. Apartment complex management eventually unlocked the door for the police to enter. They went inside, continuing to loudly announce that they were with the police department. No one responded. Police officers cleared the first floor of the apartment and proceeded to the second floor, continuing to announce their presence. They then found Smith on a bed in one of the bedrooms. He was arrested without further incident.

Smith was indicted on charges of sodomy in the first degree, burglary in the first degree, sexual abuse in the first degree, intimidating a witness in the legal process, attempt to commit rape in the first degree, and being a persistent felony offender in the second degree. During trial, the intimidating a witness in the legal process charge was amended to terroristic threatening. The jury convicted Smith of sodomy in the first degree, criminal attempt to commit rape in the first degree, and terroristic threatening and recommended a sentence of twenty years in prison. The trial court sentenced Smith consistently with this recommendation. Additional facts are developed as necessary for our analysis.

## II. ANALYSIS

Smith alleges that the trial court made several errors warranting reversal of his conviction. First, he argues that the trial court erred in admitting irrelevant, prejudicial evidence of his flight and pretrial silence. Second, he

4

argues that the trial court erred in allowing the Commonwealth to improperly impeach Roberta and erred in refusing to grant a mistrial after Officer Moore misled the jury. Third, Smith argues that the trial court erred in allowing J.A. to identify him. Fourth, he argues that the trial court erred in admitting improper hearsay evidence. Finally, he argues that the trial court erred in denying his request to instruct the jury on the lesser included offense of sexual abuse. We address each allegation in turn.

## A. Evidence of Flight and Pretrial Silence

Smith first argues that the trial court erred in admitting irrelevant, prejudicial evidence of his flight and pretrial silence. He asserts this occurred in three ways. First, he argues that the Commonwealth improperly used the fact that he did not answer the door of the apartment when the police knocked and announced themselves as evidence of flight. Second, he argues that Sergeant Keene improperly commented on his silence when the police were in the apartment. Finally, he argues that evidence of the man fleeing from J.A.'s house after committing the sodomy should not have been used as evidence of his guilt.

This Court reviews a trial court's decision on the admission of evidence for an abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire*

5

*& Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky. 2000) (citing *English*, 993 S.W.2d at 945).

Smith argues that evidence that he did not answer the door when police knocked and did not respond when they announced themselves once inside of the apartment was improperly used as evidence of his guilt. He argues that his failure to respond is not the same as flight, which can be used as evidence of guilt, because the police's attempt to serve the warrant was not spatially or temporally close to the crime and because there was no proof that he knew of the allegations that had been made against him. Smith argues that this evidence was not relevant and even if it was relevant, its probative value was substantially outweighed by its potential for prejudice.

Under Kentucky Rule of Evidence (KRE) 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, "[a]ll relevant evidence is admissible" unless prohibited by another rule, statute, or the Constitutions of Kentucky or the United States. KRE 402. Under KRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

This Court has long held that "proof of flight to elude capture or to prevent discovery is admissible because 'flight is always some evidence of a

6

sense of guilt.'" *Rodriguez v. Commonwealth*, 107 S.W.3d 215, 218 (Ky. 2003) (quoting *Hord v. Commonwealth*, 227 Ky. 439, 13 S.W2d 244, 246 (1928)). This rule is "based on the inference that the guilty run away but the innocent remain." *Id.* at 219. Further, "evidence of flight is admissible because it has a tendency to make the existence of the defendant's guilt more probable: a guilty person probably would act like a guilty person." *Id.*

Smith argues that *Rodriguez* requires that the flight be "both spatially and temporally close to the crime charged." *Id.* However, although we noted in *Rodriguez* that the defendant's theft of a truck and subsequent flight in the stolen truck was close in time and space to the commission of the robbery offense with which he was charged, we explained that what was "more important[]" was that he likely

> stole the truck to avoid the officers and not because he desired the truck itself. In other words, there was evidence to infer that Rodriguez stole the truck as a means to escape arrest for the robbery, rather than as an end in itself. Thus, the evidence was relevant and admissible subject to the balancing test of KRE 403.

*Id.* Thus, the proximity in time and space was relevant to our analysis, but not determinative. Further, Smith has pointed us to no other case where we have held that proximity in time and space is required.

In *Cherry v. Commonwealth*, we explained that "evidence of a defendant's flight **or attempts to avoid arrest** has long been admissible under Kentucky law 'to show a sense of guilt because flight is always some evidence of a sense of guilt.'" 458 S.W.3d 787, 795 (Ky. 2015) (emphasis added) (quoting *Doneghy v. Commonwealth*, 410 S.W.3d 95 (Ky. 2013)). In this case, a reasonable

7

inference that could be drawn from Smith's failure to answer the door or respond when police knocked on the door and entered the apartment, while loudly announcing their presence, is that Smith was "attempt[ing] to avoid arrest." *Id.* This attempt to avoid arrest was then relevant as evidence of guilt. Thus, the trial court did not abuse its discretion in admitting this evidence.

Smith next argues that the Commonwealth improperly used his pre-arrest silence, specifically his failure to answer the door or respond to officers upon entry to the apartment, as evidence of his guilt in violation of the Fifth Amendment to the United States Constitution. A defendant has a Fifth Amendment right to remain silent that extends to the pre-arrest phase of a case, and "an invocation of that right by remaining silent cannot be used against him." *Moss v. Commonwealth*, 531 S.W.3d 479, 487 (Ky. 2017). However, "official compulsion is required for the privilege to attach." *Baumia v. Commonwealth*, 402 S.W.3d 530, 538 (Ky. 2013).

In *Baumia*, we held that the defendant "was not officially compelled to incriminate herself" when an officer asked her to submit to a breathalyzer test after suspecting she had been drinking. *Id.* at 538–39. We further held that while the fact of the defendant's refusal to submit was admissible, her entire statement explicitly invoking her right to remain silent was not. *Id.* at 539.

In this case, there was no official compulsion for Smith to incriminate himself. First, he was not compelled to do anything. Second, merely answering the door or responding to police announcing their presence would not, in and

8

of itself, be incriminatory. Therefore, the trial court did not abuse its discretion in admitting this evidence.

Finally, Smith argues that the Commonwealth improperly argued in closing argument that the man's running from the house after the sodomy was evidence of Smith's guilt. He argues that the man running from the house would only be evidence of **Smith's** guilt if there was evidence that **Smith** was the man seen running. He asserts that there was no proof of this.

We have held on countless occasions that "[c]ounsel has wide latitude during closing arguments. . . . The longstanding rule is that counsel may comment on the evidence and make all legitimate inferences that can be reasonably drawn therefrom." *Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010) (citations omitted). In this case, although Roberta could not identify Smith as the man who ran out of J.A.'s house while she was testifying, she had previously identified him as such to the police. Further, J.A. identified Smith as her attacker,[2] and no testimony was elicited that anyone else was in the home when the crimes were committed. From this evidence, a "legitimate inference[]" could be drawn that Smith was the man who ran out of J.A.'s house. Thus, the Commonwealth's closing argument was proper.

**B. Roberta's Identification of Smith**

Smith next argues that the trial court erred in allowing the Commonwealth to impeach Roberta by playing a portion of Officer Moore's

---

[2] We acknowledge that both of these identifications are challenged by Smith. However, we find no error in the admission of either. *See* Subsections B and C.

body camera video in which Roberta identified Smith as the man who ran from J.A.'s house. Smith argues that the video was improper impeachment evidence for two reasons. First, he argues it was improper impeachment because Roberta's statement in the video was not based on personal knowledge but instead was based on J.A.'s statement to her. Second, he argues it was improper impeachment evidence because Roberta could not remember making the statement to Officer Moore. Finally, Smith argues that the trial court should have granted his motion for a mistrial when Officer Moore incorrectly testified that Roberta identified the man she saw running from the house as "Joseph Smith." We address each of these arguments.

During Roberta's trial testimony, she was adamant that she did not see the face of the man who ran from J.A.'s house and could not identify him. Her testimony in this regard was clear. Because of this, the Commonwealth sought to impeach her with the statement she made to Officer Moore on the night of the incident. In the video of that interaction, Officer Moore can be heard asking Roberta, "Do you recognize him? Do you know his name?" Roberta then responded, "Joseph Something. I don't know his last name." At the bench conference to discuss the admission of this recording, Smith argued that in the video Roberta also told Officer Moore that she did not see anything. The implication, according to Smith, was that Roberta's identification of Smith on the night of the incident was not based on her personal recognition of him but instead was based on information provided to her by J.A. The trial court decided to allow the Commonwealth to impeach Roberta with her prior

10

inconsistent statement but also told Smith that he could play the portion of the interview where Roberta said she did not see anything.

The trial court's decision on the admission of evidence is reviewed for an abuse of discretion. *Clark,* 223 S.W.3d at 95; *English,* 993 S.W.2d at 945. Under KRE 602, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Smith argues not that Roberta's trial testimony was not based on her personal knowledge, but instead argues that Roberta's statement to Officer Moore, which was used to impeach her credibility at trial, was not based on her personal knowledge. However, Smith only points to Roberta's trial testimony as evidence that her prior statement was not based on personal knowledge. Despite the suggestion by the trial court, Smith did not play any additional portion of Roberta's statement to Officer Moore during trial.

As previously mentioned, Roberta's testimony at trial was clear that she did not see the face of the person who ran from J.A.'s house and thus could not identify him. However, admission of a prior inconsistent statement is just that—admission of a prior statement that is **different from** the statement made at trial. There is nothing in the record before us, other than her trial testimony, that suggests Roberta's statement to Officer Moore identifying the man who ran out of the house as "Joseph Somebody" was not based on her personal knowledge at the time. Because of this, there was no error in the

11

admission of Roberta's prior inconsistent statement based on the argument that it was not based on personal knowledge.

Smith also argues that the video recording was improper impeachment evidence because Roberta did not remember what she told Officer Moore on the night of the incident. Smith relies on *Wiley v. Commonwealth,* 348 S.W.3d 570 (Ky. 2010) as support for his argument. In *Wiley,* we held that "the relevant inquiry in determining if a lack of memory is (or should be treated as) a prior inconsistent statement, is whether, within the context of the case, there is an appearance of hostility of the witness which is the driving force behind the witness's claim that he is unable to remember the statement." *Id.* at 578. Smith argues that because Roberta was not hostile to the Commonwealth, her inability to remember what she told Officer Moore is not inconsistent with what she did tell him.

What Smith fails to acknowledge, however, is that "[a] statement is inconsistent for purposes of KRE 801A(a)(1) whether the witness **presently contradicts or** denies the prior statement, **or** whether he claims to be unable to remember it." *Brock v. Commonwealth,* 947 S.W.2d 24, 27 (Ky. 1997) (emphasis added) (citing *Wise v. Commonwealth,* 600 S.W.2d 470, 472 (Ky. App. 1978)). In this case, Roberta's testimony at trial—that she did not know who came running out of the house—"presently contradict[ed]" her statement to the police that she knew or recognized the man as Joseph Something.[3]

---

[3] Many of the cases on which *Wiley* relies involve witnesses who claim an inability to remember the entire underlying event, not just the content of their prior

12

Further, we have previously held that a "trial judge has considerable discretion in determining whether testimony is 'inconsistent' with prior statements; inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *Meece v. Commonwealth*, 348 S.W.3d 627, 672 (Ky. 2011) (quoting *United States v. Dennis*, 625 F.2d 782, 795 (8th Cir. 1980)). The trial court did not abuse its "considerable discretion" in admitting Roberta's prior inconsistent statement to Officer Moore.

Finally, Smith argues that the trial court erred in refusing to grant a mistrial when Officer Moore incorrectly testified that Roberta told him she recognized Joseph Smith as the person who ran from the house. Immediately after Officer Moore testified to this, Smith objected, and a bench conference ensued. Smith argued that Officer Moore testified to a fact not in evidence, as the recording of Roberta, which had already been played for the jury, clearly showed Roberta identified the man who ran out of the house as "Joseph Somebody" and not Joseph Smith. The Commonwealth agreed that in the recording Roberta identified the man as "Joseph Somebody." Smith then moved for a mistrial, and the trial court denied that motion. When the Commonwealth resumed questioning Officer Moore, the Commonwealth immediately elicited testimony that Roberta actually said, "Joseph Somebody."

---

statement, as in this case. *See e.g., Wise v. Commonwealth*, 600 S.W.2d 470 (Ky. App. 1978); *Manning v. Commonwealth*, 23 S.W.3d 610 (Ky. 2000)

We have explained the circumstances under which a trial court should grant a mistrial as follows:

> A trial court only declares a mistrial if a harmful event is of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way. Stated differently, the court must find a manifest, urgent, or real necessity for a mistrial. The trial court has broad discretion in determining when such a necessity exists because the trial judge is "best situated intelligently to make such a decision." The trial court's decision to deny a motion for a mistrial should not be disturbed absent an abuse of discretion.

*Matthews v. Commonwealth,* 163 S.W.3d 11, 17 (Ky. 2005) (footnotes omitted).

In this case, the jury had already twice heard the recording of Roberta's statement. Further, they heard Roberta repeatedly deny being able to identify the man who ran out of J.A.'s house. Finally, the Commonwealth corrected the error in Officer Moore's testimony as quickly as it could. For these reasons, we cannot hold that the trial court abused its discretion in denying Smith's motion for a mistrial.

### C. J.A.'s Identification of Smith

Smith next argues that the trial court erred in allowing J.A. to identify him as her assailant because J.A.'s personal knowledge came not from her observations of the man in the room but instead from the person's response when she said, "Joseph, stop." He argues that J.A. based her ID on an improper adoptive admission that the man's name was Joseph. We review alleged errors in the admission of evidence for abuse of discretion. *Clark,* 223 S.W.3d at 95; *English,* 993 S.W.2d at 945. Smith acknowledges that this

14

alleged error was not preserved and requests palpable error review under Kentucky Rule of Criminal Procedure (RCr) 10.26.

Under KRE 801A(b)(2), "[a] statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is . . . [a] statement of which the party has manifested an adoption or belief in its truth." This rule provides for an exception to the usual hearsay rule which prohibits admission of out of court statements offered "to prove the truth of the matter asserted." KRE 801, 802. Use of KRE 801A is only necessary if the statement being admitted is in fact hearsay which would otherwise be excluded. In this case, the statement admitted was not offered for "the truth of the matter asserted." Thus, KRE 801A does not apply.

The statement at issue is J.A.'s statement, "Joseph, stop," which she made on the night in question. *See Trigg v. Commonwealth*, 460 S.W.3d 322, 331 (Ky. 2015) ("*[I]t is not the silence itself that constitutes the 'statement' to be admitted into evidence.* The 'statement' that the rule admits into evidence is the audible expression of *another* person, 'the declarant,' whose statement the defendant heard and to which the defendant's silence 'manifested an adoption or belief in its truth.'") J.A.'s statement was not being offered for the truth of that statement; it was not offered to actually prove that Joseph was the man to whom J.A. was speaking. Instead, it was offered to explain why J.A. **identified** Joseph as the man who sexually assaulted her. Although this difference is subtle, it is material to this analysis. Without there being hearsay, we need not

15

determine if an exception to the hearsay rule applies. Accordingly, the trial court did not abuse its discretion in admitting J.A.'s identification of Smith as her attacker.

### D. Hearsay Evidence

Smith next argues that the trial court erred in admitting evidence of J.A.'s hearsay statement that "he spit on me." He further argues that the admission of this evidence violated his rights under the Confrontation Clause. This issue is partially preserved and partially unpreserved. Smith requests palpable error review for any portion of this issue that is unpreserved. The trial court's decision to admit this evidence is reviewed for an abuse of discretion. *Clark*, 223 S.W.3d at 95; *English*, 993 S.W.2d at 945.

In addition to serving the arrest warrant on Smith, Sergeant Keene was a part of the chain of custody of the physical evidence in this case, as he was the evidence custodian for the Lebanon Police Department. He testified about the sexual assault evidence collection kit and the individual items included in that kit. As he was describing the swabs that were taken, he read the label on the face swab which said, in part, "He spit on her face." Smith objected, and a bench conference was conducted.

At the bench conference, Smith objected to the admission of both the label itself and the reading of the label on hearsay grounds, noting that J.A. had not testified at trial that Smith had spit on her. Initially, Smith also asked for an admonition. The Commonwealth explained that it was offering this evidence both to impeach J.A. and to explain why Nurse Rogers took the face

16

swab, as face swabs are not generally collected after a sexual assault. The trial court acknowledged that the label itself was "problematic" and would not be admitted into evidence. The trial court also excluded the statement itself, as there had not been any evidence presented yet that Smith had spit on J.A.'s face. The court then asked Smith what he wanted done, since Sergeant Keene had already testified to the statement. Smith explained that he did not want an admonition at that point, but that if the appropriate testimony was not elicited later in the trial, he would likely ask for an admonition at that time. Smith expressed a concern that an admonition would only draw more attention to the inadmissible statement. The trial court then reserved ruling on an admonition. Smith did not request an admonition on this issue at any later point of the trial, and none was given.

After Sergeant Keene testified, Nurse Rogers testified. During her testimony, another bench conference was held regarding J.A.'s statement to Nurse Rogers that "he spit on me." During this bench conference, the trial court ruled that no proper foundation under KRE 613 had been laid to introduce J.A.'s prior inconsistent statement. The trial court instructed the Commonwealth to re-call J.A. in order to directly ask her about her prior statement, and then the Commonwealth could re-call Nurse Rogers.

The Commonwealth then did as instructed by the trial court. It called J.A. to testify and asked her specifically if she recalled telling Nurse Rogers that Smith had spit on her. J.A. testified that she told Nurse Rogers something similar, but that she would call it "slobbering" rather than "spitting." The

17

Commonwealth then re-called Nurse Rogers who testified that she took the face swab because J.A. told her Smith had spit on her face. Dr. Stephen Grover then testified to the same thing. The trial court admitted this evidence after finding that it was important for the medical professionals to explain why they had taken the face swab.

We first address Smith's argument that the admission of J.A.'s out of court statement violated his Confrontation Clause rights. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In this case, J.A. testified once and then was re-called to be questioned directly about her prior statement. Smith had an opportunity to confront and cross-examine her each time. Smith alleges that he was only able to confront her about her prior statement because the trial court erroneously allowed her to be re-called to testify. As we discuss below, the trial court did not abuse its discretion in allowing the trial court to re-call her. Accordingly, Smith's Confrontation Clause rights were not violated.

We now move to Sergeant Keene's testimony in which he read from the swab label which said, "He spit on me." Smith objected to this testimony, and the trial court effectively sustained his objection. The trial court then asked Smith what remedy he wanted. Smith merely asked the trial court to note the issue and then explicitly stated that he did not want an admonition at that time. He stated he would request one later if he deemed it desirable. Smith never asked for an admonition regarding this testimony. We have previously

18

held that "where an admonishment is sufficient to cure an error and the defendant fails to ask for the admonishment, we will not review the error." *Lanham v. Commonwealth*, 171 S.W.3d 14, 28 (Ky. 2005). Thus, we will not review the allegation of error in Sergeant Keene's testimony.

Smith next argues that the trial court should not have allowed J.A. to be re-called and to then be asked a leading question about her statement to Nurse Rogers. He further argues that J.A.'s prior statement to Nurse Rogers was not inconsistent with J.A.'s trial testimony because J.A. merely failed to mention it at trial, and thus J.A. was improperly impeached with the prior statement.

Under KRE 611(a), "the trial court has inherent authority to control the trial proceedings and . . . to control the mode of interrogation of witnesses." *Mullikan v. Commonwealth*, 341 S.W.3d 99, 104 (Ky. 2011). It should exercise this control over both "the mode and order of interrogating witnesses and presenting evidence so as to . . . [m]ake the interrogation and presentation effective for the ascertainment of the truth." KRE 611(a)(1). Given this broad authority, we cannot hold that the trial court abused its discretion in allowing the Commonwealth to re-call J.A. to testify about her prior statement.

We further cannot hold that the trial court abused its discretion in allowing the Commonwealth to ask J.A. a leading question about the out of court statement. Although leading questions are generally not permitted during direct examination, they may be allowed as "necessary to develop the witness' testimony." KRE 611(c). In order to confront a witness with a prior statement, a party must be able to present that statement to the witness. Often the only way

19

to accomplish this is to directly ask the witness if he or she remembers making the statement. That is what occurred in this case. Further, we have previously held that "judgments will not be reversed because of leading questions unless the trial judge abused his discretion and a shocking miscarriage of justice resulted." *Tamme v. Commonwealth*, 973 S.W.2d 13, 27 (Ky. 1998) (citations omitted). In this case, the trial court did not abuse its discretion, and no "shocking miscarriage of justice resulted." *See id.*

Finally, as we previously explained, a "trial judge has considerable discretion in determining whether testimony is 'inconsistent' with prior statements; inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *Meece*, 348 S.W.3d at 672 (quoting *Dennis*, 625 F.2d at 795). We cannot hold that the trial court abused its discretion in determining that J.A.'s prior statement to Nurse Rogers was inconsistent with her trial testimony in which she completely failed to mention that Smith spit or slobbered on her.

Next, Smith argues that the trial court erred in allowing Nurse Rogers to be re-called to testify to J.A.'s out of court statement in order to explain why Nurse Rogers took the face swab. Smith asserts that the reason the face swab was taken was not relevant. However, as the trial court found, it was important for the jury to understand why the face swab was taken and why it was tested for saliva and then for DNA. We cannot hold the trial court abused its discretion in concluding so.

Finally, Smith asserts that the probative value of J.A.'s out of court statement to Nurse Rogers was substantially outweighed by the danger of undue prejudice under KRE 403. Under KRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice." However, KRE 403 "does not offer protection against evidence that is merely prejudicial in the sense that it is detrimental to a party's case." *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012) (citations omitted). Instead, it prohibits "[e]vidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Richmond v. Commonwealth*, 534 S.W.3d 228, 232 (Ky. 2017) (quoting *Butler v. Commonwealth*, 367 S.W.3d 609, 615 (Ky. App. 2012)). In this case, J.A.'s out of court statement did none of these things, and thus the trial court did not abuse its discretion under KRE 403 in admitting it.

### E. Lesser Included Offense Instruction

Smith next argues that the trial court erred in refusing to instruct the jury on sexual abuse in the first degree as a lesser included offense of sodomy in the first degree. This argument was preserved by Smith's oral request for this lesser included offense instruction and the tendering of the requested instruction to the trial court. *See* RCr 9.54; *Elery v. Commonwealth*, 368 S.W.3d 78, 89 (Ky. 2012). We review the trial court's refusal to give a specific

21

jury instruction for an abuse of discretion. *Sergeant v. Schaffer*, 467 S.W.3d 198, 204 (Ky. 2015).

We review a trial court's decision not to give the jury an instruction on a lesser offense under two principles:

> (1) it is the duty of the trial judge to prepare and give instructions on the whole law of the case ... [including] instructions applicable to every state of the case deducible or supported to any extent by the testimony; and (2) although a defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions, the trial court should instruct as to lesser-included offenses only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense.

*Holland v. Commonwealth*, 114 S.W.3d 792, 802 (Ky. 2003) (internal citations and quotation marks omitted). Sexual abuse in the first degree is a lesser included offense of sodomy in the first degree. *Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (Ky. 1993). Therefore, if the evidence supported it, Smith would have been entitled to an instruction on sexual abuse in the first degree.

Smith argues that he is entitled to the instruction because the jury could have doubted that he was trying to penetrate her with his penis, as required for a conviction for sodomy, and instead believed that he merely rubbed her with his penis, which would constitute sexual abuse. However, there was simply insufficient evidence of this presented for us to hold that the trial court abused its discretion in refusing to instruct on this offense. J.A.'s testimony was clear that Smith tried to insert his penis into her vagina but was unsuccessful. She testified that this made him angry, and that he said he was not going to leave

22

until he got what he wanted. Dr. Grover also testified that he would usually use a speculum when taking the vaginal swab after a sexual assault, but that his attempts to insert the speculum caused J.A. great pain, and thus he took the swab without one. This supports J.A.'s testimony that Smith tried but was unsuccessful in inserting his penis into her vagina. No other testimony was offered to contradict hers. Accordingly, the trial court did not abuse its discretion in refusing to instruct the jury on the lesser included offense of sexual abuse, as the jury could not have had a reasonable doubt as to Smith's guilt of sodomy and yet still believed beyond a reasonable doubt that he was guilty of sexual abuse.

### III. CONCLUSION

For the foregoing reasons, we affirm the Marion Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General